James R. COOK, Claimant–Appellant,

v.

Anthony J. PRINCIPI, Secretary of Veterans Affairs, Respondent–Appellee.

No. 00–7171.

United States Court of Appeals, Federal Circuit.

DECIDED: Dec. 20, 2002.

Rehearing En Banc Denied Feb. 3, 2003.

Kenneth M. Carpenter, Carpenter, Chartered, of Topeka, KS, argued for claimant-appellant.

Martin F. Hockey, Jr., Senior Trial Counsel, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent-appellee. With him on the brief were Robert D. McCallum, Jr., Assistant Attorney General; and David M. Cohen, Director. Of counsel on the brief were Richard D. Hipolit, Deputy Assistant General Counsel; and Martie Adelman, Staff Attorney, Department of Veterans Affairs, of Washington, DC.

Linda E. Blauhut, Paralyzed Veterans of America, of Washington, DC, for amicus curiae Garrett V. Hayre. With her on the brief was Michael P. Horan.

Before MAYER, Chief Judge, FRIEDMAN, Senior Circuit Judge, NEWMAN, MICHEL, LOURIE, CLEVENGER, RADER, SCHALL, BRYSON, GAJARSA, LINN, DYK, and PROST, Circuit Judges.

Opinion for the court filed by Circuit Judge SCHALL, in which Senior Circuit Judge FRIEDMAN and Circuit Judges MICHEL, LOURIE, CLEVENGER, RADER, BRYSON, LINN, DYK, and PROST join.

Concurring opinion filed by Circuit Judge DYK, in which Circuit Judge LINN joins.

Dissenting opinion filed by Circuit Judge GAJARSA, in which Chief Judge MAYER and Circuit Judge PAULINE NEWMAN join.

SCHALL, Circuit Judge.

James R. Cook appeals the decision of the United States Court of Appeals for Veterans Claims ("Veterans Court") in *Cook v. West*, No. 98–1801, 2000 WL 719866 (Table) (Vet.App. June 1, 2000). In its decision, the Veterans Court upheld the ruling of the Board of Veterans Appeals ("Board") that the alleged failure of the Veterans' Administration's[1] Regional Office ("RO") to give Mr. Cook a proper medical examination before denying his 1952 claim for service-connected benefits did not constitute clear and unmistakable

---

1. The Veterans' Administration was renamed the Department of Veterans Affairs in 1988. Department of Veterans Affairs Act, Pub.L. No. 100–527, 102 Stat. 2635 (1988).

Throughout this opinion, "VA" will be used as an abbreviation for both the Veterans' Administration and the Department of Veterans Affairs.

error ("CUE") under 38 U.S.C. § 5109A. *See id.* at \*2–\*5. The Veterans Court also rejected Mr. Cook's argument that, under *Hayre v. West*, 188 F.3d 1327 (Fed.Cir. 1999), the RO's alleged failure to give him a proper medical examination rendered the RO's denial of service connection non-final. *Cook*, 2000 WL 719866, at \*5. Subsequently, a split panel of this court affirmed the decision of the Veterans Court. *Cook v. Principi*, 258 F.3d 1311 (Fed.Cir.2001), *vacated*, 275 F.3d 1365 (Fed.Cir.2002). The panel (Mayer, C.J., Friedman, S.J., Rader, J.) held that the Veterans Court did not err in ruling that the RO's alleged violation of the duty to assist could not serve as the basis for a claim of CUE. At the same time, the panel held that the *Hayre* exception to the rule of finality did not apply in Mr. Cook's case. Chief Judge Mayer dissented on the latter point, stating that "a breach of the duty to assist the veteran by failing to provide a proper medical examination vitiates the prior decision of the Regional Office for the purpose of direct appeal." *Cook*, 258 F.3d at 1316 (Mayer, C.J., dissenting).

Mr. Cook petitioned for rehearing *en banc*. In so doing, he argued that, under a proper application of *Hayre*, a showing that the VA violated any statutory or regulatory duty towards a veteran vitiates the finality of a decision regarding the veteran's entitlement to benefits. On January 4, 2002, we granted Mr. Cook's petition for rehearing *en banc* and vacated the panel opinion. *Cook*, 275 F.3d at 1366. For purposes of the *en banc* proceedings, we asked the parties to brief the following two questions:

1. Whether this court's decision in *Hayre v. West*, 188 F.3d 1327 (Fed. Cir.1999), should be overruled insofar as that case holds that the existence of "grave procedural error" renders a decision of the Veterans' Administration non-final?

2. Whether, if *Hayre* is overruled in this respect, a failure of the Secretary to assist the veteran under the law and regulations applicable at the time (affirmatively demonstrated by the record before the adjudicator in the particular case) can constitute clear and unmistakable error ("CUE") under 38 U.S.C. § 5109A? *See Roberson v. Principi*, 251 F.3d 1378 (Fed.Cir.2001).

We answer the *en banc* questions as follows: First, to the extent that it created an additional exception to the rule of finality applicable to RO decisions, *Hayre* is overruled. Second, a failure of the Secretary to assist a veteran under applicable law and regulations cannot constitute CUE. In Parts I and II of this opinion, respectively, we address the first and second *en banc* questions. In Part III, we consider Mr. Cook's appeal in light of our answers to the *en banc* questions. Doing so, we affirm the decision of the Veterans Court.

## DISCUSSION

### I.

A. First En Banc Question

Whether this court's decision in *Hayre v. West*, 188 F.3d 1327 (Fed.Cir.1999), should be overruled insofar as that case holds that the existence of "grave procedural error" renders a decision of the Veterans' Administration non-final?

B. *The Rule of Finality*

 If a veteran fails to appeal from an RO decision concerning a claim, the decision becomes "final," and "the claim will not thereafter be reopened or allowed, except as may otherwise be provided by regulations not inconsistent with this title." 38 U.S.C. § 7105(c) (2000). Principles of finality and *res judicata* apply to agency decisions that have not been appealed and have become final. *See Astoria Fed. Savs.*

& *Loan Ass'n v. Solimino,* 501 U.S. 104, 107–08, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991) (allowing the application of *res judicata* to administrative agency determinations that have attained finality); *Routen v. West,* 142 F.3d 1434, 1437 (Fed.Cir.1998) (applying finality and *res judicata* to VA decisions). As we observed in *Routen,* "[u]nless otherwise provided by law, the cases are closed and the matter is thus ended." *Routen,* 142 F.3d at 1438.

■ There are, however, two statutory exceptions to the rule of finality. First, pursuant to 38 U.S.C. § 5108, the Secretary must reopen a claim "[i]f new and material evidence [regarding the claim] is presented or secured." Second, a decision "is subject to revision on the grounds of clear and unmistakable error." 38 U.S.C. §§ 5109A (decision by the Secretary) & 7111 (decision by the Board). These are the only statutory exceptions to the finality of VA decisions.[2]

## C. *Hayre v. West*

In *Hayre,* the veteran filed a claim in 1972 for service connection for a "nerve problem." 188 F.3d at 1329. Hayre stated on his claim form that he had been treated while in service for "nerves" and that he had "talked to [a] psychiatrist," and he requested that the RO obtain his service medical records ("SMRs"). *Id.*

The RO sent a request for the SMRs to the National Personnel Records Center but did not receive them. *Id.* The RO made no further attempts to obtain the records and rejected Hayre's claim without notifying him that his SMRs had not been obtained. The RO told Hayre in its denial notice that "we don't find in your medical records or elsewhere any evidence of a nervous condition." *Id.*

In 1992, Hayre again applied for service-connected disability. Following a VA examination, he was awarded service connection and a disability rating for post-traumatic stress disorder. In 1993, seeking an earlier effective date for the award of service connection, Hayre brought a claim challenging the RO's 1972 decision as "clearly erroneous." Hayre argued that the RO had not obtained the psychiatric SMRs that he had requested and had failed to afford him a VA examination. *Id.* The RO denied the claim, and the Board and the Veterans Court affirmed, treating the claim as a CUE claim.[3] Hayre appealed to us.

On appeal, we reversed and remanded. We first held that an RO's single unsuccessful request for pertinent SMRs that are specifically sought by a claimant does not fulfill the RO's duty to assist the veteran in developing facts pertinent to his claim.[4] *Id.* at 1331–32. However, relying

**2.** We have held that a veteran may bring a claim having the same factual basis as a previously disallowed claim when an intervening and substantive change in law or regulation creates a new basis for entitlement to a benefit. *See Spencer v. Brown,* 17 F.3d 368, 372 (Fed.Cir.1994); *Routen,* 142 F.3d at 1438. Such a claim is treated as a new claim, however, and not a request for reconsideration of a previously disallowed claim. *See Spencer,* 17 F.3d at 372.

**3.** A veteran who successfully brings a CUE claim is entitled to benefits retroactive to the date of the original claim. *See* 38 U.S.C. § 5109A(b) ("For the purpose of authorizing

benefits, a rating or other adjudicative decision that constitutes a reversal or revision of a prior decision on the grounds of clear and unmistakable error has the same effect as if the decision had been made on the date of the prior decision.").

**4.** When *Hayre* was decided, the statutory duty to assist was set forth at 38 U.S.C. § 5107(a) (1994) ("The Secretary shall assist such a claimant in developing the facts pertinent to his or her claim."). In enacting 38 U.S.C. § 5107(a) as part of the Veterans' Judicial Review Act, Pub.L. No. 100–687, § 103(a), 102 Stat. 4105, 4106 (1988), Congress codified the VA's obligation to assist claimants,

on *Bustos v. West,* 179 F.3d 1378, 1381 (Fed.Cir.1999), we held that such a breach of the duty to assist cannot amount to CUE. *Hayre,* 188 F.3d at 1333.

We next held that the RO's 1972 decision was not final for purposes of appeal. In so doing, we created a third exception to the rule of finality in addition to the two statutory exceptions created by Congress. Specifically, we held that "where there is a breach of the duty to assist in which the VA failed to obtain pertinent SMRs specifically requested by the claimant and failed to provide the claimant notice explaining the deficiency, the claim does not become final for purposes of appeal." *Id.* at 1334. In reaching this holding, we stated that "[i]n cases of grave procedural error, ... the [Veterans Court] has consistently held that RO or Board decisions are not final for purposes of direct appeal." *Id.* at 1333 (citing *Tablazon v. Brown,* 8 Vet.App. 359, 361 (1995); *Hauck v. Brown,* 6 Vet.App. 518, 519 (1994); *Kuo v. Derwinski,* 2 Vet. App. 662, 666 (1992); *Ashley v. Derwinski,* 2 Vet.App. 307, 311 (1992)). We explained that "[a] breach of the duty to assist in which the VA failed to obtain pertinent SMRs specifically requested by the claimant and failed to provide the claimant with notice explaining the deficiency is a procedural error of, at least, comparable gravity [to the errors in the four cited Veterans Court cases] that vitiates the finality of an RO decision for purposes of direct appeal." *Id.* We elaborated on the importance of providing adequate notice to the veteran:

Notice to the claimant explaining the failure to obtain pertinent and specifically requested SMRs is ... essential to insuring that the agency of original jurisdiction ("AOJ") will adequately develop a veteran's claim before deciding it on the merits. Furthermore, if the claimant is to effectively appeal his or her case, the claimant must be cognizant of all the evidence considered by the AOJ. Where so much of the evidence in VA adjudications is circumstantial at best, notice explaining the failure to obtain pertinent and specifically requested SMRs is critical to ensuring a proper award for benefits and an effective right to judicial review.

*Id.* at 1334. We thus concluded that if the Veterans Court "finds that the RO breached the duty to assist [Hayre] in 1972, then the 1972 RO decision is not final for purposes of direct appeal."[5] *Id.* at 1335. We remanded the case to the Veterans Court for further proceedings consistent with our opinion.

## D. *Whether Hayre Should Be Overruled*

▪ The government contends that we should overrule the holding of *Hayre* that the finality of a VA decision is vitiated if the VA commits a "grave procedural error" when adjudicating a claim. The government argues that the *Hayre* decision is not supported by statute or legislative history. For his part, Mr. Cook argues that the *Hayre* decision is consistent with Con-

---

which had existed in 38 C.F.R. § 3.103(a) since 1972. *See* 38 C.F.R. § 3.103(a) (1987) ("[I]t is the obligation of [the VA] to assist a claimant in developing the facts pertinent to his [or her] claim...."); *Hayre,* 188 F.3d at 1331. The duty to assist is now codified at 38 U.S.C. § 5103A(a) ("The Secretary shall make reasonable efforts to assist a claimant in obtaining evidence necessary to substantiate the claimant's claim for a benefit under a law administered by the Secretary."). Section 5103A(a) was added to the statutory scheme

when Congress enacted the Veterans Claims Assistance Act of 2000, Pub.L. No. 106–475, 114 Stat. 2096 (2000). *See id.,* § 3(a), 114 Stat. at 2097. The regulation setting forth the duty to assist remains unchanged. *See* 38 C.F.R. § 3.103(a) (2000).

5. Pursuant to the Veterans Claims Assistance Act, the VA, as part of the duty to assist, is required to notify a claimant when it is unable to obtain relevant records. *See* 38 U.S.C. § 5103A(b)(2).

gress' intent to create a system where the veteran is fully and sympathetically assisted in the development of his claims before the VA makes a decision on the merits. He further contends that the holding in *Hayre* recognizes the need for a mechanism to allow a veteran to collaterally challenge a VA decision where the veteran later discovers that the VA breached its duty to assist him in developing his claim.

We agree with the government that *Hayre* should be overruled. The statutory scheme provides only two exceptions to the rule of finality. At the same time, we see nothing in the legislative history of the pertinent statutes—38 U.S.C § 5109A (CUE challenge to an RO decision), 38 U.SC. § 7111 (CUE challenge to a Board decision), 38 U.S.C. § 5108 (reopening of a claim based on new and material evidence), and former 38 U.S.C. § 5107(a) (recognizing the VA's duty to assist the claimant in the development of his claims)—that indicates that Congress intended to allow additional exceptions to the finality of VA decisions based upon "grave procedural error."

The purpose of the rule of finality is to preclude repetitive and belated readjudication of veterans' benefit claims. Congress knew how to create exceptions to the finality of VA decisions, and it explicitly did so in two circumstances. It enacted the statutes codifying CUE challenges (sections 5109A and 7111) and the statute allowing claims based on new and material evidence (section 5108). Applying the familiar canon of *expressio unius est exclusio alterius,* we conclude that Congress did not intend to allow exceptions to the rule of finality in addition to the two that it expressly created.[6] *See, e.g., Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,* 507 U.S. 163, 168, 113 S.Ct. 1160, 122 L.Ed.2d 517 (1993) (applying the *expressio unius est exclusio alterius* canon

in concluding that because Federal Rule of Civil Procedure 9(b) imposes a particularity requirement for pleading two specific types of actions, such particularity is not required for pleading other non-enumerated types of actions); *BMW Mfg. Corp. v. United States,* 241 F.3d 1357, 1361 (Fed. Cir.2001) ("It thus appears that Congress expressly provided for the exemption of certain merchandise from the [Harbor Maintenance Tax]. Where it did not so provide, it is reasonable to conclude that it did not so intend.").

In support of its holding that "grave procedural error" vitiates the finality of a VA decision, the *Hayre* panel relied on the legislative history of the Veterans' Benefits Amendments of 1989, Pub.L. No. 101–237, § 115(a)(1), 103 Stat.2062, 2065 (1989), which added sections 3004(a)(1) and (2) to title 38 of the United States Code (currently codified as amended at 38 U.S.C. § 5104(a) and (b)). *Hayre,* 188 F.3d at 1333–34. The relevant provision, section 5104(b), provides that when the VA denies a benefit, the claimant must be provided with a statement of the reasons for the decision and a summary of the evidence considered by the VA; it was effective with regard to VA decisions issued after January 31, 1990. Pub.L. No. 101–237, § 115(b), 103 Stat. at 2066. Section 5104(b) was intended to remedy a lack of information in VA notices denying claims. S.Rep. No. 101–126, at 294–97 (1989), *reprinted in* 1989 U.S.C.C.A.N. 1469, 1700–03. There is nothing in the legislative history relating to section 5104(b), however, to indicate that Congress intended that the lack of information in a pre 1990 VA decision could support a claim to reopen a final decision.

As noted above, the *Hayre* panel also relied on four Veterans Court decisions involving "grave procedural error" in sup-

---

**6.** *Expressio unius est exclusio alterius* means that "the expression of one thing is the exclu-

sion of another." *Harris v. Owens,* 264 F.3d 1282, 1296 (10th Cir.2001).

port of its conclusion that the VA's single request for Hayre's SMRs and its failure to notify him of its inability to obtain the records vitiated the finality of the 1972 RO decision. *Hayre*, 188 F.3d at 1333. We do not think, however, that these cases provide support for the creation of a third exception to the finality of an unappealed VA decision.

An understanding of the process for obtaining disability benefits will help put the four Veterans Court decisions upon which the *Hayre* panel relied in proper perspective. We outlined the process in *Maggitt v. West*, 202 F.3d 1370, 1375 (Fed.Cir. 1998). A veteran may appeal an adverse RO decision to the Board. Appellate review is initiated by the veteran filing a notice of disagreement ("NOD") with the VA. *See* 38 U.S.C. § 7105(a).[7] The NOD is a written communication from the veteran expressing dissatisfaction or disagreement with an adjudicative decision of the VA. *See* 38 C.F.R. § 20.201; *Collaro v. West*, 136 F.3d 1304, 1308 (Fed.Cir.1998) (explaining that disagreement between the VA and the veteran over legal entitlement to a particular benefit may form the basis of an NOD). Once the VA receives the veteran's NOD, it must prepare a "statement of the case." *See* 38 U.S.C. § 7105(d)(1). The statement of the case "frames the [VA's] view of the case, and is meant to assist the veteran in gaining every benefit that can be supported in law." *Maggitt*, 202 F.3d at 1375. The veteran is required to file a "formal appeal" with the Board within sixty days from the date the statement of the case is mailed. *See* 38 U.S.C. § 7105(d)(3) ("The appeal should set out specific allegations of error of fact or law, such allegations related to specific items in the statement of the case."); 38 C.F.R. § 20.202. After the Board renders a decision on the merits of the veteran's

request for benefits, the veteran may appeal the Board's decision to the Veterans Court. *See* 38 U.S.C. § 7252(a). A veteran has 120 days from the date of receipt of a Board decision to appeal to the Veterans Court. *See* 38 U.S.C. § 7266.

In each of the cases cited by the *Hayre* panel, the Veterans Court held that the time for appealing either an RO or a Board decision did not run where the VA failed to provide the veteran with information or material critical to the appellate process just described. *See Tablazon v. Brown*, 8 Vet.App. 359 (1995) (because the VA did not furnish the veteran with a statement of the case, he was unable to file a "formal appeal" with the Board and the RO rating decision did not become final); *Hauck v. Brown*, 6 Vet.App. 518 (1994) (because the veteran never received notification of claim denial in accordance with 38 U.S.C. § 7105(b)(1), the one-year period in which to file an NOD did not begin to run); *Kuo v. Derwinski*, 2 Vet.App. 662 (1992) (the veteran was not furnished with a statement of the case; therefore, the period in which to lodge a "formal appeal" with the Board did not begin to run); *Ashley v. Derwinski*, 2 Vet.App. 307 (1992) (since the Board did not mail its decision in accordance with 38 U.S.C. § 7104(e) and 38 U.S.C. § 7266, the 120–day period within which to appeal to the Veterans Court did not begin to run).

*Tablazon, Hauck, Kuo,* and *Ashley* involved straightforward application of 38 U.S.C. §§ 7105(b)(1), 7105(d)(3), and 7266. Section 7105(b)(1) provides that the one-year period which the veteran has to file an NOD does not begin to run until the date of the mailing of notice of the claim denial to the veteran. Section 7105(d)(3) makes the furnishing of a statement of the case the event that triggers the veteran's obligation to file a "formal appeal" with the

---

7. The appeal period is one year "from the date of mailing of notice of the result of initial review or determination." 38 U.S.C. § 7105(b)(1).

Board, while pursuant to section 7266, the 120 day period for appealing to the Veterans Court from a decision of the Board does not begin to run until the Board's decision is mailed to the veteran. In contrast, there is no statutory basis for the *Hayre* panel's holding that a breach of the duty to assist the veteran in developing facts pertinent to his claim would vitiate the finality of an RO decision.

■ Furthermore, in *Tablazon, Hauck, Kuo,* and *Ashley,* the VA's failure to comply with statutory procedural requirements regarding notification of benefit determinations had the effect of extinguishing the claimant's right to appeal an adverse decision. In Hayre's case, however, regardless of any failure of the duty to assist in the development of evidence, Hayre was afforded notice of the RO decision denying his claim for service connection. If he had filed an NOD with respect to the 1972 administrative decision, the VA would have been required to provide him with a statement of the case, which would have notified him of the ba-

sis for the denial of his claim. *See* Pub.L. No. 87–666, 76 Stat. 553 (1962) (adding statement-of-the-case requirement at 38 U.S.C. § 4005, currently codified as amended at 38 U.S.C. § 7105). Thus, the VA's failure to notify Hayre that it had been unsuccessful in obtaining his SMRs did not preclude him from challenging the administrative decision denying his claim and raising the issue of the duty to assist after he was notified of the basis for the decision.[8]

■ In summary, a breach of the duty to assist the veteran does not vitiate the finality of an RO decision. We therefore overrule *Hayre* to the extent that it created an additional exception to the rule of finality applicable to VA decisions by reason of "grave procedural error." If additional exceptions to the rule of finality in 38 U.S.C. § 7105(c) are to be created, if is for Congress, not this court, to provide them. As we discuss next, however, to the extent it stands for the proposition that a breach of the duty to assist cannot constitute CUE, *Hayre* remains good law.[9]

8. If on direct review, the Veterans Court concludes that there was a breach of the duty to assist, it may vacate the decision on appeal and remand the case to the VA for further consideration following compliance with the duty to assist. *See Pond v. West,* 12 Vet.App. 341, 346 (1999).

9. Our dissenting colleague, Judge Gajarsa, believes that an applicant for veterans' benefits possesses a property interest of sufficient magnitude to invoke the protection of the Fifth Amendment's Due Process Clause. Starting from that premise, he would hold that, where a breach of the duty to assist results in the denial of benefits, application of the rule of finality is tantamount to a denial of due process and, accordingly, the rule should be vitiated. Thus, Judge Gajarsa would create a new exception to the rule of finality, in order to obviate what he perceives to be a procedural due process violation arising from a breach of the duty to assist.

The Due Process Clause question was not briefed by the parties or argued to us. Never-

theless, assuming *arguendo* that a breach of the duty to assist may implicate the Due Process Clause, we note that the claim adjudication process before the RO and the Board has long provided a structure that affords a veteran a hearing. *See* 38 C.F.R. §§ 3.3–3.14; 19.0–19.7 (1949). During the adjudication of his claim, a veteran may always assert that there has been a breach of the duty to assist. Moreover, as noted, under the regime that has existed since 1988, if the Veterans Court determines that the VA failed to comply with the duty to assist, the court may vacate the decision being appealed and remand the case for further consideration in compliance with duty to assist. *Pond,* 12 Vet.App. at 346.

If, however, a breach of the duty to assist is not known to the veteran during the adjudication of his claim, and becomes known to the veteran only after the decision to deny his claim for benefits has become final, the veteran may only apply to have the final judgment reopened through the two avenues provided by Congress, CUE and new and material evi-

## II.

### A. *Second En Banc Question*

Whether, if *Hayre* is overruled in this respect, a failure of the Secretary to assist the veteran under the law and regulations applicable at the time (affirmatively demonstrated by the record before the adjudicator in the particular case) can constitute clear and unmistakable error ("CUE") under 38 U.S.C. § 5109A? *See Roberson v. Principi*, 251 F.3d 1378 (Fed.Cir.2001).

### B. *The Concept of CUE*

CUE provides a means for collateral attack on a final decision of an RO. This concept, once solely grounded in regulation, *see* 38 C.F.R. § 3.105, is now also governed by statute. In 1997 Congress enacted Pub.L. No. 105–111, 111 Stat. 2271 (1997), which is codified at 38 U.S.C. §§ 5109A and 7111. Section 5109A covers claims of clear and unmistakable error at the RO level, while section 7111 covers claims of clear and unmistakable error at the Board level.[10]

Although the two provisions are quite similar, only section 5109A, pertaining to review of an RO decision, is relevant to our inquiry. Section 5109A states in relevant part that:

(a) A decision by the Secretary under this chapter is subject to revision on the grounds of clear and unmistakable error. If evidence establishes the error, the prior decision shall be reversed or revised.

(b) For the purposes of authorizing benefits, a rating or other adjudicative decision that constitutes a reversal or revision of a prior decision on the grounds of clear and unmistakable error has the same effect as if the decision had been made on the date of the prior decision.

38 U.S.C. § 5109A.[11]

The regulation from which section 5109A was derived, and which remains in place today, provides that final determinations of the RO will be accepted as correct unless CUE is shown. *See* 38 C.F.R. § 3.105(a). Further, like the statute, the regulation provides for the reversal of decisions found to contain CUE and the retroactive award of benefits to the date of the original decision. *Id.* The pertinent language in the regulation is as follows:

---

dence. These two avenues constitute significant departures from the normal rule that final judgments cannot be reopened. For the reasons stated *infra* in this opinion, a breach of the duty to assist may not form the predicate for a CUE claim. Whether it is possible for a veteran to ameliorate the potential harm of a breach of the duty to assist with a claim of new and material evidence is not a matter before us. In any event, the possibility that an error may occur during the claim adjudication process is not a reason to hold the process in violation of the Due Process Clause and therefore vitiate the rule of finality.

10. Before the enactment of section 7111, the concept of CUE with respect to Board decisions was not recognized. *See Smith v. Brown*, 35 F.3d 1516, 1526–27 (Fed.Cir.1994) ("[T]he Secretary correctly interpreted CUE review authority in 38 C.F.R. § 3.105(a) as relating only to review of AOJ adjudicatory decisions and not to those of the Board.").

11. Section 7111 states in relevant part that:

(a) A decision by the Board is subject to revision on the grounds of clear and unmistakable error. If evidence establishes the error, the prior decision shall be reversed or revised.

(b) For the purposes of authorizing benefits, a rating or other adjudicative decision of the Board that constitutes a reversal or revision of a prior decision of the Board on the grounds of clear and unmistakable error has the same effect as if the decision had been made on the date of the prior decision.

38 U.S.C. § 7111.

(a) *Error.* Previous determinations which are final and binding, including decisions of service connection, degree of disability, age, marriage, relationship, service, dependency, line of duty, and other issues, will be accepted as correct in the absence of clear and unmistakable error. Where evidence establishes such error, the prior decision will be reversed or amended. For the purpose of authorizing benefits, the rating or other adjudicative decision which constitutes a reversal of a prior decision on the grounds of clear and unmistakable error has the same effect as if the corrected decision had been made on the date of the reversed decision.

38 C.F.R. § 3.105(a).

The Veterans Court has rendered decisions addressing the meaning of "clear and unmistakable error," as used in the statute and regulation. In *Russell v. Principi,* the court addressed for the first time the validity of 38 C.F.R. § 3.105. 3 Vet.App. 310 (1992) (*en banc*). In upholding the validity of the regulation, *id.* at 314, the court set forth the parameters of a successful claim of CUE:

> By its express terms, 38 C.F.R. § 3.105(a) refers to "determinations on which an action was predicated." Therefore, it necessarily follows that a "clear and unmistakable error" under § 3.105(a) must be the sort of error which, had it not been made, would have manifestly changed the outcome at the time it was made.

*Id.;*[12] *see also Fugo v. Brown,* 6 Vet.App. 40, 44 (1993) ("[E]ven where the premise of error is accepted, if it is not absolutely clear that a different result would have ensued, the error complained of cannot be, *ipso facto,* clear and unmistakable error."). The requirement that a clear and unmistakable error be one which would have manifestly changed the outcome of the RO's determination was adopted by this court in *Bustos. See* 179 F.3d at 1381 ("[T]o prove the existence of CUE as set forth in § 3.105(a), the claimant must show that an outcome-determinative error occurred.").

In *Russell,* the Veterans Court also explained that in order for an error to rise to the level of CUE, the error must have been made on the record as it existed at the time the decision was made. *See Russell,* 3 Vet.App. at 313–314. According to the court, "[a] determination that there was a 'clear and unmistakable error' must be based on the record and the law that existed *at the time of the prior AOJ ... decision." Id.* (emphasis added). As explained by the Veterans Court in *Caffrey v. Brown,* 6 Vet.App. 377, 383 (1994), a CUE claim is an attack on a prior judgment that asserts an incorrect application of law or fact. Necessarily, the asserted error must have occurred on the record "as it existed at the time of the disputed adjudication." *Id.* We extended this interpretation of the regulation to section 5109A in *Pierce v. Principi,* 240 F.3d 1348, 1354 (2001) ("We ... affirm the court's interpretation of the term 'evidence' in § 5109A and [38 C.F.R. § 3.105(a)] as being limited to evidence that was of record at the time the challenged RO decision was made.").

12. *Russell* addressed a prior version of the CUE regulation. In that version, the first sentence of section 3.105(a) differed slightly from its present counterpart. It read as follows:

"Previous determinations on which an action was predicated, including decisions of service connection, degree of disability, age, marriage, relationship, service dependency, line of duty, and other issues will be accepted as correct in the absence of clear and unmistakable error." *Russell,* 3 Vet.App. at 312–313.

C. *Whether a Breach of the Duty to Assist Can Constitute CUE*

Mr. Cook urges us to overrule precedent holding that a breach of the duty to assist cannot serve as a basis for CUE. *See Hayre,* 188 F.3d at 1333 (stating that "a breach [of the duty to assist] is not an error of the sort that should be contemplated in the CUE analysis"); *Caffrey,* 6 Vet.App. at 384 (stating that "the VA's breach of the duty to assist cannot form a basis for a claim of CUE because such a breach creates only an incomplete rather than an incorrect record"). Mr. Cook advances three arguments in support of his position. First, he contends that requiring the CUE analysis to be conducted on the record as it existed at the time of the original decision is flawed. He argues that the proper interpretation of section 5109A allows for all evidence of error to be considered in reviewing a CUE claim, not just evidence that was a part of the original record. Second, Mr. Cook urges that the requirement that an error must be outcome determinative in order to constitute CUE, stated in *Bustos, see* 179 F.3d at 1381, and relied on in part by *Hayre* in its rejection of Hayre's CUE claim, *see* 188 F.3d at 1333, is also flawed. Mr. Cook urges that a lesser standard should be applied consistent with the goal of "fundamental fairness." He suggests that a lesser standard for CUE was advanced by this court in *Roberson v. Principi,* 251 F.3d 1378 (Fed.Cir.2001). For its part, the government argues that the interpretations of 38 C.F.R. § 3.105 and 38 U.S.C. § 5109A discussed above are supported by the statute and legislative history and, therefore, should be upheld.

We agree with the government that a breach of the duty to assist cannot constitute CUE. Both our precedent and that of the Veterans Court establish two requirements for a CUE claim. First, in order to constitute CUE, the alleged error must have been outcome determinative, *see Bustos,* 179 F.3d at 1381; second, the error must have been based upon the evidence of record at the time of the original decision, *see Pierce,* 240 F.3d at 1354. As explained below, in order to hold that a breach of the duty to assist can form the basis for a CUE claim, we would have to jettison these requirements. We do not think that such a change in the law is warranted.

Turning first to the requirement that the alleged error be outcome determinative, we note that both the regulation and the statute provide that once a prior decision is found to contain clear and unmistakable error it is to be "reversed." *See* 38 C.F.R. § 3.105(a); 38 U.S.C. § 5109A. The call for reversal on account of clear and unmistakable error clearly suggests that the contemplated error is outcome determinative. *See id.*

The legislative history of section 5109A also supports the conclusion that an alleged error must be outcome determinative in order to constitute CUE. We have held that Congress' intent in drafting section 5109A was to codify and adopt the CUE doctrine as it had developed under 38 C.F.R. § 3.105. *See Pierce,* 240 F.3d at 1353 (noting that the legislative history of section 5109A "reveals Congress' awareness and approval of the decision of the Veterans Court in *Russell,*" and pointing out that the House and Senate Reports, *see* H.R.Rep. No. 105–52, at 2–3, and S.Rep. No. 105–157, at 3, "discuss *Russell* as setting forth the current state of the law which was to be codified by § 5109A"); *Donovan v. West,* 158 F.3d 1377, 1382 (Fed.Cir.1998) ("Pub.L. No. 105–111 . . . made no change in the substantive standards in the regulation governing modifications of a regional office decision because of 'clear and unmistakable error.'"); *Bustos,* 179 F.3d at 1381 ("38 U.S.C. § 5109A

made no change to the substantive standards governing modifications of RO decisions because of CUE ... This statutory provision merely codified 38 C.F.R. § 3.105 and the Court of Appeals for Veterans Claims' long standing interpretation of CUE."). As stated in the legislative history, the purpose of the bill was to "effectively codify [38 C.F.R. § 3.105], and extend the principle underlying it to BVA decisions." H.R.Rep. No. 105–52, at 2 (1997). In addition, Congress explicitly endorsed the *Russell* interpretation of CUE. The House Report to Pub.L. No. 105–111 cites liberally to the *Russell* and *Fugo* opinions in its discussion of CUE, including the following language from *Fugo:*

> It must always be remembered that clear and unmistakable error is a very specific and rare kind of "error". It is the kind of error, of fact or of law, that when called to the attention of later reviewers compels the conclusion, to which reasonable minds could not differ, that the result would have been manifestly different but for the error. Thus even where the premise of error is accepted, if it is not absolutely clear that a different result would have ensued, the error complained of cannot be, *ipso facto,* clear and unmistakable. *Russell v. Principi,* 3 Vet.App. 310, 313 (1992) (*en banc* ).

H.R.Rep. No. 105–52, at 3 (quoting *Fugo,* 6 Vet.App. at 44). The Senate Report cites to *Russell* in its explanation of the doctrine of CUE: "CVA has ruled that 'clear and unmistakable error' is error that is obvious and was outcome determinative with respect to the decision under review." S.Rep. No. 105–157, at 3.

We turn now to the second requirement of CUE. As noted above, in *Russell,* the

Veterans Court held that a determination that there was CUE must be based upon the record that existed at the time of the original RO decision. We have held that the legislative history of section ·5109A supports the requirement that the CUE analysis be limited to the record before the prior adjudicator. In *Pierce,* we stated that "[a]lthough the language of § 5109A does not expressly limit the evidence that can be considered in a CUE challenge to evidence that was of record ·at the time the challenged decision was made, the legislative history of the statute, the purpose of the statutè, and the overall statutory scheme for reviewing veterans' benefits decisions all indicate that Congress intended the evidence to be so limited." 240 F.3d at 1353. In addition, we pointed out that "[a]lthough the House and Senate reports do not expressly discuss *Russell's* holding with respect to the evidence that can be considered when evaluating a CUE claim, they do discuss *Russell* as setting forth the current state of the law that was to be codified by § 5109A." *Id.* Significantly, the House Report explains, "[t]his bill addresses errors similar to the kinds which are grounds for reopening Social Security claims. Under the Social Security system, a claim may be reopened at any time *to correct an error which appears on the face of the evidence used when making the prior decision.*" H.R.Rep. No. 105–52, at 3 (emphasis added).

We conclude that decisions of this court and the Veterans Court concluding that a clear and unmistakable error at the RO level must be outcome determinative and must be apparent from the evidence of record at the time of the original decision are supported by the language of 38 U.S.C. § 5109A and its legislative history. We therefore reject Mr. Cook's request that we overturn existing law to that effect.[13]

---

**13.** As noted above, review of Board decisions for CUE is governed by 38 U.S.C. § 7111. The VA has promulgated Board rules imple-

menting section 7111. *See* 38 C.F.R. §§ 20.1400 1411. Although neither section

The requirements that a clear and unmistakable error be outcome determinative and be based on the record that existed at the time of the original decision make it impossible for a breach of the duty to assist to form the basis for a CUE claim. First, a breach of the duty to assist cannot constitute an outcome determinative error. Without the benefit of additional evidence that might have been in the record but for the breach, we may only conclude that, as a result of the breach, the record was incomplete. This cannot be an "outcome-determinative" error. In *Caffrey*, the Veterans Court explained that

> [w]hile it is true that an incomplete record may ultimately lead to an incorrect determination, it cannot be said that an incomplete record is also an incorrect record. If the facts contained in the record are correct, it is not erroneous, although not embodying all of the relevant facts. Rather, an incomplete record is just that—incomplete.... Thus, an incomplete record, factually correct in all other respects, is not clearly and unmistakably erroneous.

*Caffrey*, 6 Vet.App. at 383. Second, a breach of the duty to assist necessarily implicates evidence that was not before the

RO at the time of the original decision. In accordance with the duty to assist, the VA is required to help a veteran in obtaining evidence in support of his or her claim. *See* 38 U.S.C. § 5103A. If the VA breaches this duty, the result is that the RO considers the veteran's claim on a record that is incomplete because it does not include all the pertinent evidence. Incomplete or not, however, as explained above, the only record that may be reviewed in the CUE analysis is the record that was before the RO at the time of the original decision. Evidence that should have been part of the record, but was not (because of a breach of the duty to assist), may not be considered. In sum, a breach of the duty to assist cannot constitute CUE.

Finally, we do not agree with Mr. Cook that *Roberson v. Principi* supports the proposition that a breach of the duty to assist can form the basis for a CUE claim. In *Roberson*, a panel of this court reviewed the Veterans Court's rejection of a CUE claim that was based on an alleged breach of the duty to assist relating to a 1984 rating (percentage of disability) decision. We explained that, "[a]s we held in *Hayre v. West*, 188 F.3d 1327, 1332–33 (Fed.Cir. 1999), breach of the duty to assist cannot

7111 nor its implementing rules are before us today, it is worth noting that the rules adopt the requirements that in order for an error to rise to the level of CUE, it must be outcome-determinative and must be based upon the record before the Board when it rendered its original decision. Rule 1403 states that, for there to be CUE, "there must have been an error in the Board's adjudication of the appeal which, had it not been made, would have manifestly changed the outcome when it was made." 38 C.F.R. § 20.1403(c). The rule emphasizes that "[i]f it is not absolutely clear that a different result would have ensued, the error cannot be clear and unmistakable." *Id.* Rule 1403 also states that "[r]eview for clear and unmistakable error in a prior Board decision must be based on the record ... that existed when that decision was made." 38 C.F.R. § 20.1403(b)(1).

In *Disabled American Veterans v. Gober*, 234 F.3d 682 (Fed.Cir.2000), we were called upon to review the validity of the Board's CUE rules under 38 U.S.C. § 502. Among the rules challenged in *Disabled American Veterans* was Rule 1403(c). It was argued, *inter alia*, that the rule's outcome determinative requirement was inconsistent with section 7111. We rejected that argument. In so doing, we pointed out that, in section 5109A, "which in relevant part is identical to section 7111, Congress expressly adopted the [Veterans Court's] definition of CUE that requires that 'a claimant must show ... an error would manifestly change the outcome of a prior decision.'" 234 F.3d at 696 (quoting *Bustos*, 179 F.3d at 1381).

form the basis for a CUE claim." *Roberson*, 251 F.3d at 1384.

Having rejected the argument that a breach of the duty to assist could serve as the basis for a CUE claim, we went on to "determine the standard that applies when the VA is considering a CUE claim." *Id.* We concluded that, in adjudicating a CUE claim, the VA is required to follow the approach outlined in *Hodge v. West,* 155 F.3d 1356 (Fed.Cir.1998), for the situation in which a veteran seeks to reopen a disallowed claim based upon new and material evidence under 38 U.S.C. § 5108. *Roberson,* 251 F.3d at 1384. In *Hodge,* we stated that the VA is "to fully and sympathetically develop the veteran's claim to its optimum before deciding it on the merits." 155 F.3d at 1362. In *Roberson,* a critical issue was whether, in addressing Roberson's claim that there was CUE in the 1984 rating decision, the VA and the Veterans Court had erred by failing to recognize that in his original claim, Roberson had sought total disability based upon individual unemployability ("TDIU"). We concluded that, in line with the *Hodge* rubric, once a veteran submits evidence of a medical disability and makes a claim for the highest rating possible and also submits evidence of unemployability, the VA must consider TDIU. We stated that, in order to develop a claim "to its optimum," as required by *Hodge,* the VA "must determine all potential claims raised by the evidence, applying all relevant laws and regulations, regardless of whether the claim is specifically labeled as a claim for TDIU." *Roberson,* 251 F.3d at 1384. We therefore reversed the holding of the Veterans Court that Roberson had failed to make a claim for TDIU before the RO in 1984. *Id.* We remanded the case to the court for consideration of Roberson's appeal of the denial of his CUE claim in light

of our decision. *Roberson* does not support Mr. Cook's contention that a breach of the duty to assist may constitute CUE.

## III.

Having held that there can be no judicially crafted exception to the rule of finality and that a breach of the duty to assist cannot constitute CUE, we turn now to the facts of this case.

Mr. Cook served in the United States Army from August of 1942 to December of 1945. His service medical records contain a March 1945 diagnosis of "psychoneurosis, anxiety type." When he was recalled for service in 1950, an examination found that he was "not qualified for active duty due to his ulcer." In 1952, Mr. Cook submitted a benefits claim to the RO for service connection for "Stomach Trouble Nervous Stomach." A physical examination revealed a duodenal ulcer. In a neuropsychiatric examination the attending physician noted:

> The present day idea is, generally, that a peptic ulcer may be a visceral expression of long continued anxiety. In this case, a diagnosis of duodenal ulcer has been established. A dual diagnosis should not be made, but it should be clear that the diagnosis of duodenal ulcer includes a psychic or emotional component.

In June of 1952, the RO denied service connection for "stomach trouble and nervousness." It stated that Mr. Cook's ulcer was not incurred or aggravated in service and that the most recent examination had not revealed nervousness. The RO also stated that the "[neuropsychiatric] examination revealed no evidence of a psychiatric disability."

Mr. Cook did not appeal the RO decision to the Board; it therefore became final. *See* 38 U.S.C. § 709 (1952).[14] In July of

---

**14.** At the time Mr. Cook's claim was rejected, the rule of finality codified today in 38 U.S.C.

§ 7105(c) was set forth in 38 U.S.C. § 709, which stated in relevant part that "[w]hen a

1989, Mr. Cook sought to reopen his claim. The Board did so and denied service connection. The Veterans Court, however, reversed and directed the Board to determine Mr. Cook's rating for both his nervous disorder and his ulcer. *Cook v. Brown,* 4 Vet.App. 231, 238 (1993). Thereafter, the RO awarded Mr. Cook a thirty percent rating for his anxiety disorder and a zero percent rating for his duodenal ulcer. The RO made the awards effective as of July 1989 (when Mr. Cook had sought reopening of his claims).

Mr. Cook appealed the RO's decision, contending that the effective date of the award should have been the April 1952 date of the original filing of his claim and that the RO's 1952 decision contained CUE and therefore was non-final.[15] The Board rejected Mr. Cook's contention that the 1952 regional office decision constituted CUE, and Mr. Cook appealed to the Veterans Court. While the appeal was pending at the Veterans Court, *Hayre* was decided. The Veterans Court ordered briefing by the parties as to the application of *Hayre* to Mr. Cook's case.

Subsequently, in a single-judge unpublished decision, the Veterans Court affirmed the decision of the Board. The court first held that the alleged deficiencies in the RO's 1952 decision did not constitute CUE. The court then rejected Mr. Cook's argument that the RO's failure to give him an adequate medical examination in 1952 violated its duty to assist him, so as to render the 1952 decision not final and make the date of that decision the effective date of his benefits. As to whether Mr. Cook's claim fit within the excep-

tion to the rule of finality created by *Hayre,* the court concluded that even if Mr. Cook had established a breach of the duty to assist, the failure to provide him with an appropriate medical examination did not rise to the level of the "grave procedural error" found in *Hayre.*

We affirm the decision of the Veterans Court. In Part I of this opinion, we have overruled *Hayre* insofar as it holds that the existence of "grave procedural error" renders a decision of the VA non-final. In Part II, we have held that a failure of the VA to assist the veteran to the extent required by applicable law and regulations cannot constitute CUE under 38 U.S.C. § 5109A. In the face of these rulings, Mr. Cook's claim for an earlier effective date for his service-connected disability benefits must fail, because the rulings leave Mr. Cook without any ground upon which to claim an earlier effective date.

## CONCLUSION

For the foregoing reasons, the decision of the Veterans Court is affirmed.

## COSTS

No costs.

AFFIRMED.

DYK, Circuit Judge, with whom LINN, Circuit Judge, joins, concurring.

I fully join the majority's opinion, but wish to make clear that we are not decid-

---

claim shall be finally disallowed ..., it may not thereafter be reopened or allowed." Further, the regulations in place at the time stated that "[a] decision of a rating board unappealed within one year shall be final." 38 C.F.R. § 3.330 (1949). Rating boards, under 38 C.F.R. § 3.5 (1949), were vested with the original jurisdiction to determine the issues

raised by Mr. Cook of service connection and disability.

15. As noted above, the "reversal or revision of a prior decision on the grounds of clear and unmistakable error has the same effect as if the decision had been made on the date of the prior decision." 38 U.S.C. § 5109A(b).

ing today that a past breach of the duty to assist is without consequence. In particular we are not deciding the effect of a past breach of the duty to assist on a new and material evidence claim.

Unlike a successful clear and unmistakable error (CUE) claim, which is given the effective date of an earlier reversed or revised decision under 38 U.S.C. § 5109A, a successful new and material evidence claim typically is not given retroactive effect. By statute and regulation, a reopened claim generally results in the veteran's receiving payments only from the date that the application was received. 38 U.S.C. § 5110(a) ("Unless specifically provided otherwise in this chapter, the effective date of an award based on . . . a claim reopened after final adjudication . . . shall not be earlier than the date of receipt of application therefor."); 38 C.F.R. § 3.400 ("[The effective date] will be the date of receipt of the claim or the date entitlement arose, whichever is the later.").

Where there has been a material breach of the statutory duty to assist at some time in the past, and that breach by the government prevented the veteran from discovering the new and material evidence at an earlier date, a question arises as to whether retroactive relief is available in a new and material evidence proceeding. An argument for retroactivity might have particular force where the violation of the duty to assist was unknown to the veteran at the time of the original application, for example, where the Veterans Administration had pertinent undisclosed information in its files and the veteran was unaware that a proper search had not been conducted. Indeed, the government in this case appears to concede that in such circumstances retroactive relief would be available in a new and material evidence proceeding by virtue of 38 C.F.R. § 3.400(q)(2).*

I express no opinion on these questions, and write merely to emphasize that we are not deciding them today.

---

* The following colloquy between the court and government's counsel, occurred during oral argument:

THE COURT: Let me ask you a very clear hypothetical. Suppose that I was a veteran, and some years after my service I filed a claim saying I'm disabled and have been ever since an incident that occurred during my time in service. And the regional office or the veteran's board . . . adjudicates my claim in the total absence of any file of my military service and just turns down the claim saying "you just haven't proven your claim." . . . [I]t was my view that my service file clearly showed that I was injured [and] disabled way back then. Can it really be that a decision in which no military medical records were obtained can be immune from revision?

\* \* \* \* \* \*

COUNSEL: [U]nder your hypothetical, if it was adjudicated under the new and material evidence exception the individual would get the benefits going back in time, not just limited to the date of reopening . . . I respectfully refer the court to 38 C.F.R. 3.400(q) in that where a new and material evidence claim to reopen is granted, and is decided in the claimant's favor, if the basis of the decision granting benefits was based on service department records which were for some reason not before the original board, the effectiveness date goes back in time as it would in CUE and not as it was normally occurring in the typical claim to reopen.

Dissenting opinion filed by Circuit Judge GAJARSA, in which Chief Judge MAYER and Circuit Judge PAULINE NEWMAN join.

I respectfully dissent. In my view, a breach of the duty to assist a veteran by failing to provide a proper medical examination vitiates the prior decision of the regional office ("RO") for purposes of direct appeal. The duty to assist is an integral part of the pro-claimant, non-adversarial claims adjudication process of the Department of Veterans Affairs ("VA"). Congress expressly stated that the VA must "fully and sympathetically develop the veteran's claim to its optimum before deciding it on the merits." H.R. Rep. No. 100–963 at 13, *reprinted in* 1988 U.S.C.C.A.N. 5782, 5795; *see also* 38 U.S.C. § 5107(a) (1994) ("The Secretary shall assist such a claimant in developing the facts pertinent to the claim."), *amended by* 38 U.S.C. § 5103A (2000) ("Duty to assist claimants"); 38 U.S.C. § 5103 (2000) ("Notice to claimants of required information and evidence"). Breaches of this critical duty compel us to toll the finality of VA decisions, as we held in *Hayre v. West*, 188 F.3d 1327, 1334 (Fed.Cir.1999), which the majority today overrules, or to declare such a breach a clear and unmistakable error. This would ensure that the VA's duty to assist claimants does not become a hollow slogan.

In the veterans' uniquely pro-claimant system of awarding benefits, systemic justice and fundamental considerations of procedural fairness are critical, *Hayre*, 188 F.3d at 1334 (citing S.Rep. No. 101–126 at 294, *reprinted in* 1989 U.S.C.C.A.N. 1469, 1700), which I develop below. This is because, as Congress recognized, in most cases before the RO the veteran is not represented by counsel or a veterans service organization and representation at the Board of Veterans' Appeals ("Board") is discouraged. As a result, a veteran's ability to ensure that a fair and procedurally correct decision has been reached on his or her claim is limited; so too is his or her ability to make a well-informed choice whether to accept or appeal a decision. *See* S.Rep. No. 101–126 at 294, *reprinted in* 1989 U.S.C.C.A.N. 1469, 1700. Thus, VA decisions on records that are less than thoroughly and adequately prepared may go unchallenged and the veteran will lose years of earned benefits that, but for the VA's breach of its duty to assist, he or she would have collected. In an adversarial system, it may be appropriate to dismiss a claimant who does not immediately challenge a decision. But in a paternalistic system, where a claimant is led to believe that his or her claim is being fairly and accurately decided to afford him or her the fullest compensation he or she is due, it is readily apparent why a decision may not be promptly challenged. The VA is charged with the development of the merits of a claim and acts as final adjudicator as well; there must be a remedy when it fails in its responsibility. To allow the organization to default in its development of a claim and then to adjudicate it without the possibility of challenge is an injustice.

The question raised here is whether a claimant should be denied an opportunity "to collaterally challenge a VA decision where the veteran later discovers that the VA breached its duty to assist." *Ante*, at 1338. The majority says no such opportunity exists, for two reasons: first, "[p]rinciples of finality and *res judicata* apply to agency decisions that have not been appealed and .... [u]nless otherwise provided by law, the cases are closed and the matter is thus ended," *ante*, at 1336 – 1337 (citing *Astoria Fed. Savs. & Loan Ass'n v. Solimino*, 501 U.S. at 107–08, 111 S.Ct. 2166; *Routen v. West*, 142 F.3d 1434, 1437 (Fed.Cir.1998)); and second, "[t]he statutory scheme provides only two exceptions

to the rule of finality [which do not apply to Cook and Hayre]," *ante*, at 1337.

I recognize the importance of the rule of finality; however, enforcement of that policy must be circumscribed by constitutional due process and tempered by fairness and equity.[1] "Although administrative estoppel is favored as a matter of general policy, its suitability may vary according to the specific context of the rights at stake, the power of the agency, and the relative adequacy of agency procedures." *Astoria*, 501 U.S. at 109–10, 111 S.Ct. 2166. Thus, where breaches of the statutory duty to assist result in denials of benefits, draconian application of the rule of finality is tantamount to a denial of due process. Because such breaches impose an unconstitutional restraint on an individual's property right, the rule of finality is inappropriate here.

I shall first explain why claimants for, as well as recipients of, veterans' benefits have property rights, then identify my disagreements with the majority's analysis, and finally explain why I believe a breach of the statutory duty to assist veterans imposes an unconstitutional restraint on individual property.

## A.

According to *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), to have a property interest in a government benefit, "a person clearly must have more than an abstract need or desire for [the benefit]. He [or she] must have more than a unilateral expectation of it. He [or she] must, instead, have a legitimate claim of entitlement to it." *Id.* at 577, 92 S.Ct. 2701. Entitlements derive from "an independent source such as state law," that is, statutes or regulations "that secure certain benefits and that support claims of entitlements to those benefits." *Id.* It is well established that recipients of statutory entitlements such as Social Security disability benefits have a property interest protected by the Due Process Clause of the Fifth Amendment. *See Mathews v. Eldridge*, 424 U.S. 319, 332, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) ("[T]he interest of an individual in continued receipt of [Social Security disability] benefits is a statutorily created property interest protected by the Fifth Amendment.") (citing *Richardson v. Belcher*, 404 U.S. 78, 80–81, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971); *Richardson v. Perales*, 402 U.S. 389, 401–402, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971); *Flemming v. Nestor*, 363 U.S. 603, 611, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960); *cf. Arnett v. Kennedy*, 416 U.S. 134, 166, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974) (Powell, J., concurring in part); *Roth*, 408 U.S. at 576–78, 92 S.Ct. 2701; *Bell v. Burson*, 402 U.S. 535, 539, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); *Goldberg v. Kelly*, 397 U.S. 254, 261–62, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970)). For the same reasons property interests were found in these cases, a veteran's interest in the continued receipt of

---

1. The majority addresses the dissenting opinion by stating that the Due Process Clause question was not briefed by the parties and by reemphasizing that Congress only provided two statutory exceptions to the rule of finality. *Ante*, at 1341 n. 9. However, courts may address a constitutional issue, which is not properly raised by the parties. *See, e.g.*, Ernest H. Schopler, Annotation, *What Issues Will the Supreme Court Consider, Though Not, or Not Properly, Raised by the Parties*, 42 L.Ed.2d 946 (1999). Certainly, this court may, in the interest of fairness, entertain a constitutional issue subsumed in *Hayre* and presented under a liberal reading of appellant's brief. Congress would not deny a veteran his or her constitutional rights by condoning the VA's failure to assist him or her properly. For the reasons stated *infra* in this dissent, the Constitution is paramount to statutory exceptions to the rule of finality, and thus the public policy of finality cannot trump a veteran's constitutional right to due process.

service-connected death and disability benefits is also a property interest. The statutory entitlement to such benefits is set forth in 38 U.S.C. §§ 1110, 1121, 1131, and 1141, and these sections provide an absolute right to benefits to qualified individuals. 38 U.S.C. § 1110 (2000) (providing for wartime disability compensation); 38 U.S.C. § 1121 (2000) (providing for wartime death compensation for designated heirs and dependents); 38 U.S.C. § 1131 (2000) (providing for peacetime disability compensation); 38 U.S.C. § 1141 (2000) (providing for peacetime death compensation for designated heirs and dependents).

Applicants for service-connected death and disability benefits, as distinct from recipients threatened with total or partial termination, also have a property interest in the receipt of those benefits. In *Walters v. Nat'l Assoc. of Radiation Survivors,* the Supreme Court considered whether "a statutory fee limitation, as it bears on the [veterans' benefits system] in operation, deprives a rejected claimant or recipient of 'life, liberty, or property, without due process of law' by depriving him of representation." 473 U.S. 305, 320, 105 S.Ct. 3180, 87 L.Ed.2d 220 (1985) (quoting U.S. Const. amend. V). Although the Supreme Court did not rule on the extent to which applicants for government benefits have property rights in their statutory entitlements, the Court analyzed the rights to veterans' benefits of the applicants together with the recipients as a statutorily created property interest protected by the Due Process Clause. *Id.* The First, Third, Seventh, and Ninth Circuits have held that the Due Process Clauses apply to applicants seeking property interests. *See, e.g., Ressler v. Pierce,* 692 F.2d 1212, 1214–16 (9th Cir.1982) (applicant for federal rent subsidies); *Kelly v. R.R. Retirement Bd.,* 625 F.2d 486, 489–90 (3d Cir.1980) (applicant for disabled child's annuity); *Griffeth v. Detrich,* 603 F.2d 118, 120–22 (9th Cir. 1979) (applicants for general relief pro-

gram); *Wright v. Califano,* 587 F.2d 345, 354 (7th Cir.1978) (applicant for social security benefits); *Raper v. Lucey,* 488 F.2d 748, 752 (1st Cir.1973) (applicant for driver's license). *But see Eidson v. Pierce,* 745 F.2d 453, 460 (7th Cir.1984) (ruling that holders of federal housing subsidies had no property interest because the owners of those units had complete discretion to turn away individual subsidy-holders for any reason or for no reason at all). These courts have reasoned that claimants, just like recipients threatened with termination for alleged ineligibility, have a property interest because of their statutory entitlement to benefits if they meet the substantive requirements.

For veterans basic entitlement to disability compensation derives from two statutes, both found in title 38, sections 1110 and 1131—the former relating to wartime disability compensation and the latter relating to peacetime disability compensation. Both statutes provide for compensation with the following words: "For disability resulting from personal injury suffered or disease contracted in the line of duty, or for aggravation of a preexisting injury suffered or disease contracted ... the United States will pay to any veteran thus disabled ... compensation...." 38 U.S.C. §§ 1110, 1131 (2000). Here, Cook and Hayre, who meet the threshold eligibility requirements of 38 U.S.C. § 1110, are entitled to procedural due process by virtue of the statutory mandate of the program and the VA's policy and practice in the administration of the veterans' benefits program. It is common ground that a statute declaring that veterans meeting certain eligibility criteria will receive a service-connected benefit secures the benefit for those veterans, just as a blanket of common law rules secures more traditional forms of private property for individuals. *See Roth,* 408 U.S. at 577, 92 S.Ct. 2701. As discussed below, no form of "new prop-

erty" is more clearly earned by the applicant, who received this claim of entitlement to benefits in exchange for service given to his or her country.

Correlatively, the fact that only those who meet specified criteria are entitled to the benefit does not mean that due process is inapplicable until eligibility has been conclusively proven, because this approach would deny the very procedures needed to demonstrate that a property interest exists in the first place. *See id.* ("[R]ecipients in *Goldberg v. Kelly* ... had not yet shown that they were, in fact, within the statutory terms of eligibility. But we held that they had a right to a hearing at which they might attempt to do so."). Thus, while at the application stage of the proceedings neither Cook nor Hayre had been administratively adjudged entitled to receive benefits under the regulatory scheme, an applicant for veterans' benefits nonetheless possesses a property interest of sufficient magnitude to invoke the protection of the Fifth Amendment's Due Process Clause. The property interest is not that benefits have been previously received, but the existence of statutory provisions creating the right to a remedy and defining the terms under which it can be obtained. By establishing substantive standards for qualification, the regulations governing the veterans' benefits system create a legitimate claim the applications of Cook and Hayre will not be denied unless the VA factually determines that they do not suffer from a disability originating from service. Accordingly, their statutory entitlement to benefits constitutes a protected property right.

### B.

By focusing primarily on the "red herring" finality issue, the majority avoids application of the interest-balancing test normally applied in due process cases. I understand the majority to imply two basic arguments in dismissing the arguments of

Cook and Hayre. The first is to suggest that no remedy is required when breaches of the statutory duty to assist—such as the omission of a complete and thorough medical examination for Cook—are involved. The second is that the affirmatively misleading notice sent to Hayre sufficed to adequately protect veterans' interests in any case, because veterans can be presumed to know the law regarding the veterans' benefits system and their right to appeal.

In my view, the majority's fixation on finality creates a conceptual confusion in identifying the constitutional deprivation present in these cases. In traditional cases arising under the Due Process Clause of the Fifth Amendment, governmental confiscation of property is not difficult to recognize: An individual possesses property and the Government's action deprives the individual of it. Where "new property" interests—that is, statutory entitlements—are involved, however, claimants have an interest only in their benefit level as correctly determined under the law, rather than in any particular preordained amount. *See* Charles A. Reich, *The New Property*, 73 Yale L.J. 733 (1964). Thus, while any deprivation of property by the Government implicates the Due Process Clause, only a breach resulting in denial or inadequate allocation of benefits effects a deprivation subject to constitutional constraint. It is the breach, and not the reduction *per se*, that causes the deprivation.

Keeping this point in mind, it is readily apparent that the Supreme Court's application of the Due Process Clause to governmental administrative action has not only encompassed, but indeed has been premised upon, the need for protection of individual property interests against even inadvertent breaches by the Government. *See, e.g., Memphis Light, Gas & Water*

*Div. v. Craft,* 436 U.S. 1, 98 S.Ct. 1554, 56 L.Ed.2d 30 (1978); *Mathews,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18; *Goldberg,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287. Properly applied, regulations that govern administrative decisions in such cases do not deprive recipients of property, because a beneficiary whose entitlement should be reduced or terminated under relevant statutes can claim no valid interest in continuation. Administrative decisions that affect statutory entitlements may often be correct. But when the breach—that is, the deprivation of property—occurred because the administrative agent, for reasons beyond the claimant's control, failed to comply with a statutorily mandated duty, constitutional procedures are interposed to prevent such breaches of regulation insofar as feasible. *See Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 436, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982) (holding that the post-deprivation remedy (the possibility of a negligence suit against the Commission) was insufficient to comply with due process because petitioner was challenging not the Commission's error, but the "established state procedure" that destroys his entitlement without according him proper procedural safeguards).

In the veterans' uniquely claimant friendly system of awarding compensation, breaches of the duty to assist are at the heart of due process analysis. If the Constitution provides no protection against the occurrence of such breaches, then the paternalistic interest in protecting the veteran is an illusory and meaningless assurance. The fact that breaches inevitably occur in the administration of any bureaucracy requires the conclusion that when the Secretary administers a property entitlement program, he or she has a constitutional obligation to provide due process before implementing adverse changes in the entitlement level. Otherwise, erroneous reductions or denials of benefits—that

is, deprivations of individual property—are effected without due process of law.

### C.

Because the breaches in these cases cannot merely be overlooked, I turn to the central constitutional inquiry: what process was due in light of "the practicalities and peculiarities of the case"? *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950). In determining what process is due, the court must employ a flexible balancing test that takes into account the particular facts and circumstances, as the need for procedural safeguards varies with the situation: "due process unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances." *Cafeteria Workers v. McElroy,* 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). "Due process is flexible and calls for such procedural protections as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

When reviewing alleged procedural due process violations, the Supreme Court has distinguished between (1) claims based on established state procedures and (2) claims based on random, unauthorized acts by state employees. *See Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); *Logan,* 455 U.S. at 435–36, 102 S.Ct. 1148. In the latter case, the Due Process Clause is not violated when a state employee intentionally deprives an individual of property or liberty, so long as the State provides a meaningful post-deprivation remedy. *Hudson v. Palmer,* 468 U.S. 517, 531–33, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). However, when the deprivation occurs in the more structured environment of established procedures—for example, because an adminis-

trative official, for reasons beyond the claimant's control, failed to comply with a statutorily mandated duty—courts must follow the now familiar interest—balancing analysis set forth in *Mathews*, 424 U.S. at 334–35, 96 S.Ct. 893. Identification of the specific dictates of due process generally requires consideration of three distinct factors: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." *Id.* These interests are relevant to determining the "content of the notice" as well as its timing and other procedural claims. *Goss v. Lopez*, 419 U.S. 565, 579, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975).

### 1. Importance of the Private Interest

The importance of the correct level of veterans' benefits to eligible veterans cannot be overstated. No form of new property is more clearly earned by an applicant or recipient, who received this claim of entitlement to benefits in exchange for service given to his or her country: award through the VA claims procedure is the sole process available to the veteran. He or she cannot sue for disabilities stemming from military service under the Federal Tort Claims Act. *See Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950). Veterans injured in military service generally lose all or much of their ability to earn a livelihood. Yet under the majority opinion, a man or a woman, after time in service, has no rights that may not be frustrated to serve the shibboleth of finality. The majority makes no effort to balance the interests at stake. In this clash between individual rights and the public policy of finality, the latter, they say, is automatically held to be superior and trumps the former.

### 2. Risk of Error and Value of Additional Procedures

"[A] primary function of legal process is to minimize the risk of erroneous decisions." *Mackey v. Montrym*, 443 U.S. 1, 13, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979); *see also Fuentes v. Shevin*, 407 U.S. 67, 80–81, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). Consequently, a breach that may cause deprivation of property must be "preceded by notice." *Mullane*, 339 U.S. at 313, 70 S.Ct. 652. "An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information...." *Id.* at 314, 70 S.Ct. 652 (citations omitted); *see also Memphis Light*, 436 U.S. at 14–15 n. 15, 98 S.Ct. 1554 (ruling that "skeletal" notice was constitutionally insufficient because utility customers are "of various levels of education, experience and resources" and "the uninterrupted continuity of [utility service] is essential to health and safety").

The likelihood of error due to ineffective decision notices by the VA is substantial. The General Accounting Office ("GAO") found that:

> [In] over 60 percent (539) of the 898 compensation notices reviewed, insufficient information was found to have been provided on the reason or reasons for VA's decision. GAO found that "Denial notices for compensation claims were especially poor. They often stated only that the claims were denied because service connection was not found."

S.Rep. No. 101–126, at 294, *reprinted in* 1989 U.S.C.C.A.N. 1469, 1701–02. The GAO also noted that the evidence was incomplete in approximately 10 percent of claims and that information about how a veteran could appeal a decision was not included in the notices in 2 to 3 percent of claims. *Id.*

The importance of this information can be seen in the circumstances of Cook and Hayre where the vital failure of effective notice was misleading enough to jeopardize their rights to appeal. Although "Hayre was afforded notice of the RO decision," *ante,* at 1341, the notice misleadingly assured Hayre that "we do not find in your medical records or elsewhere any evidence of the existence of a nervous condition" without obtaining the service medical records Hayre had specifically requested, *ante,* at 1337. Notice that affirmatively misleads in this fashion clearly violates the constitutional guarantee of due process. For Cook, the notice denying service connection for "stomach trouble and nervousness" stated that the "[neuropsychiatric] examination revealed no evidence of a psychiatric disability," even though the VA compensation examination in 1952 noted:

> The present day idea is, generally, that a peptic ulcer may be a visceral expression of long continued anxiety. In this case, a diagnosis of duodenal ulcer has been established. A dual diagnosis should not be made, but it should be clear that the diagnosis of duodenal ulcer inculdes [sic] a psychic or emotional component.

*Ante,* at 1347. The denial notice given to Cook did not clearly indicate that the neuropsychiatric report had evidence of a "psychic or emotional component." Although the record does not state whether Cook was aware of the contents of the report before the appeals period had run, it was important for Cook, who was relying on the pro-claimant benefits system, to be notified of what evidence was considered by the VA and how the evidence was used in reaching a decision. Without such knowledge, Cook was not in a position to evaluate its accuracy or propriety and to determine whether or not to contest it. The obvious value of notice of those simple factual determinations is that they were the only data that would have enabled Cook to "choose for himself whether to . . . acquiesce or contest" by filing a timely appeal. *Mullane,* 339 U.S. at 314, 70 S.Ct. 652. As the Supreme Court made clear in *Goldberg,* 397 U.S. at 267, 90 S.Ct. 1011, in statutory entitlement cases the Due Process Clause normally requires "timely and adequate notice detailing the reasons" for proposed administrative action. Such process is constitutionally required whenever the action may be "challenged . . . as resting on incorrect or misleading factual premises or on misapplication of rules or policies to the facts of particular cases." *Id.* at 268, 90 S.Ct. 1011. The forms of notice delivered to Cook and Hayre are sufficiently misleading that they introduce a high risk of error into the decisionmaking process, because veterans with valid entitlements might wrongly abandon their claims after an initial denial and not reassert them until their right to appeal is barred by the rule of finality.

This is especially true in the circumstances of Cook and Hayre, who relied on the non-adversarial and pro-claimant character of the veterans' benefits system and pursued their statutory entitlements without the assistance of legal counsel. *See* 38 U.S.C. § 5904(c)(1) (prohibiting fee agreements with an attorney until the Board issues a final decision); *Jaquay v. Principi,* 304 F.3d 1276, 1282 (Fed.Cir.2002) (en banc) ("[T]he law prohibiting lawyers from charging a fee has the practical effect of limiting the ability of veterans to retain a lawyer at the early stages of the claim process."); *Hayre,* 188 F.3d at 1334 (noting that "representation by attorneys is

discouraged and infrequent" (quoting S.Rep. No. 101–126, 294–97, *reprinted in* 1989 U.S.C.C.A.N. 1469, 1700–03)). While all citizens are presumed to know the law, that legal fiction is not identical to requiring that veteran claimants must be personally conversant and proficient with the arcane intricacies of an entitlement program that requires voluminous statutes, regulations, manuals, and circulars to administer.

In light of the complexity of the substance and procedures involved in these proceedings, as well as the importance of the interest at stake, I believe that Due Process includes minimal protections for the property interests of unrepresented veterans. When a veteran is not represented by counsel, the Secretary has a heightened duty to assist veterans by conscientiously developing and obtaining all the relevant evidence. The Secretary must be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited. In addition, when a veteran's service medical records are not obtained, as in *Hayre,* the VA's duty to assist is essential, because "the veteran's possession of service medical records is a decidedly abnormal. situation. The veteran cannot reasonably be expected to have such records." Department of Veterans Benefits, Veterans Administration, DVB Circular 21–83–5, Procedures for Claims Involving Delayed Receipt of Service Medical Records (Mar. 18, 1983); *see also* VA Veterans Benefits Administration Letter 20–99–60 at 1 (Aug. 30, 1999) ("Service medical records and VA medical center records are to be requested in all cases. These are records considered to be in VA custody.").

Moreover, where so much of the evidence in VA adjudications is circumstantial at best, the results of a medical examination for a veteran such as Cook, are often the determinative factor in the claim adjudication process. An insufficient examina-

tion also breaches the VA's duty to assist the veteran in fully developing his or her claim because such evidence is needed to determine whether the veteran is eligible for benefits and the amount of any such benefits. Therefore, administering an inadequate medical exam has as important an effect on the proper resolution of a veteran's claim as a failure to inform the veteran that the VA was unable to obtain medical records. A veteran must rely upon the VA for a thorough medical examination just as he or she must rely upon the department to locate service medical records. Just as a veteran must be able to assume, absent notice to the contrary, that the VA located and based its claim determination on the requested, complete, and adequate medical records, he or she should be able to assume that the VA performed a complete and thorough medical examination. Because the breach of the duty to assist in this uniquely pro-claimant system jeopardized in a fundamentally unfair manner the right to appeal, the claims of Cook and Hayre should not become final for purposes of appeal.

### 3. Governmental Interest

In contrast, requiring notices accurately to state what evidence was considered by the VA and how the evidence was used in reaching a decision does not impose a significant financial or administrative burden on the Secretary. In determining the costs to support the veterans' benefits system, Congress has already appropriated its resources with the presumption that statutory requirements will be upheld. Thus, requiring the Secretary to meet the duty to assist—by providing notices that are not affirmatively misleading and by administering complete and thorough medical exams—does not increase the expected administrative burden of providing eligible veterans with statutory entitlements. Moreover, Congress has evaluated the fi-

**1358**

nancial and administrative costs of upholding the statutory duty to assist in accordance with the interest at stake. The benefits administered by the Secretary are an entitlement by which the Nation keeps its commitment to our veterans who have sacrificed to protect and defend our freedom. The Government has considered this interest and ensured that it will continue to pay our debts to these men and women. Thus, Congress, through fiscal appropriations presuming that statutory requirements will be upheld, recognizes the value of demonstrating to veterans—to all those currently serving in our military and to those who may serve in the future—that America honors its commitments to those who have served.

In my view, regardless of the nature of the dispute between the sovereign and the citizen—whether it be a claim for social security benefits or veterans' benefits asserted by a soldier who was disabled during service to his or her country—the citizen's right to procedural due process is constitutionally protected. I am dismayed by the majority's implication that breaches in the administration of veterans' benefits programs may be ignored in determining what protection the Constitution provides. Such breaches all too often plague benefits programs designed to. aid veterans. If breaches that might be prevented inexpensively lie entirely outside the ambit of the Due Process Clause, then the non-adversarial and manifestly pro-claimant character of the veterans' benefits system would be the cruelest of shams perpetrated upon our veterans.

I would reverse the judgment of the Court of Appeals for Veterans Claims.