NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**BRUCE PALMER,**
*Claimant-Appellant,*

v.

**ERIC K. SHINSEKI, SECRETARY OF VETERANS AFFAIRS,**
*Respondent-Appellee.*

---

2011-7020

---

Appeal from the United States Court of Appeals for Veterans Claims in case no. 09-73, Judge Alan G. Lance, Sr.

---

Decided: March 11, 2011

---

BRUCE PALMER, of Altoona, Iowa, pro se.

DAVID D'ALESSANDRIS, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, for respondent-appellee. With him on the brief were TONY WEST, Assistant Attorney General, JEANNE E. DAVIDSON, Director, and BRIAN M. SIMKIN, Assistant Director. Of counsel on

the brief were MICHAEL J. TIMINSKI, Deputy Assistant General Counsel, and KRISTIANA M. BRUGGER, Attorney, United States Department of Veterans Affairs, of Washington, DC.

———————————

Before GAJARSA, PROST, and O'MALLEY, *Circuit Judges.*

PER CURIAM.

Bruce Palmer, pro se, appeals the decision of the United States Court of Appeals for Veterans Claims ("Veterans Court") affirming a Board of Veterans' Appeals decision finding that there was no clear and unmistakable error ("CUE") in a May 1989 decision by the Department of Veterans' Affairs ("VA") regional office ("RO"). That 1989 RO decision denied Palmer's claim of service connection for a psychiatric disorder, finding no medical evidence of a then-current nervous disorder and no service connection to any such condition. For the reasons explained below, we *affirm*.

## BACKGROUND

Palmer served in the United States Navy from November 1974 to October 1975. In July 1975, Palmer requested a transfer based on an alleged attack by a shipmate on June 27, 1975 (the "1975 Transfer Request"). In his request, Palmer wrote the following:

> I request a transfer to the West Coast or shore duty. I, Palmer, Bruce, was attack[ed] by a shipmate who claims to belong to the Ku Klux Klan. I was verbally abused, and also physically touch[ed] by this sailor. He also had a weapon (45 cal. gun) which I know he would have kill[ed] me or shot me if he would have found me that day.

*See Appellant's Reply Brief Addendum, at 1*;   *see also Palmer v. Shineski*, No. 09-0073, 2010 WL 2316257, at *1 (Vet. App. June 10, 2010).  Palmer's transfer request was denied.   He subsequently received an honorable discharge, with the record of discharge listing the reason as "unsuitability – apathy & defective attitudes."   While awaiting administrative separation, Palmer went on an unauthorized absence for eleven days, after which he was admitted to the Neuropsychiatric Service, Naval Regional Medical Center.   His presenting diagnosis was "chronic psychosis" with notations that he "voiced religious beliefs which bordered on the delusional" and was "aloof, withdrawn, and defensive."   After observation, his final diagnosis was changed to "passive-aggressive personality."   Palmer was discharged from the medical center on October 3, 1975, and received his discharge papers from the Navy on October 8, 1975.

Over thirteen years later, in January 1989, Palmer applied for service-connected disability benefits for "emotional problems-aggressive personality" and questionable "psychosis."   The RO considered appellant's service medical records, including his October 1975 discharge indicating a diagnosis of "passive-aggressive personality," as well as medical records from 1988 and 1989 showing treatment for abdominal pain, small bowel obstruction, and duodenal ulcers.   In May 1989, the RO denied Palmer's claim, finding that, because personality disorders are not compensable diseases or injuries under 38 C.F.R. § 3.303(c), the evidence of record did not reveal a compensable nervous condition.   Palmer did not appeal this decision, and it became final.

In 1995, and again in 1998, Palmer filed for service-connected disability benefits for Post-Traumatic Stress Disorder ("PTSD").  His 1995 claim was denied, again due to a lack of evidence of a medical diagnosis of a then-

current compensable disorder. Specifically, despite Palmer's assertion that he suffered from PTSD with paranoia, his medical records contained express medical findings of "insufficient symptoms at this time" to support such a diagnosis. Palmer did not appeal that finding.

Eventually, Palmer was diagnosed with PTSD, depression, and obsessive-compulsive symptoms. A May 1999 letter from Dr. John E. Mundt, Ph.D, a Licensed Clinical Psychologist with the Department of Veterans Affairs, to an adjudication officer at the RO, also included the opinion that the PTSD was likely connected to Palmer's described on-board trauma. Dr. Mundt also questioned the validity of the 1975 discharge diagnosis of passive-aggressive personality disorder. Based on this new medical record, Palmer's 1998 application was granted, with Palmer ultimately receiving benefits at a disability rate of 70% pursuant to a 2002 RO decision.[1]

In March 2001, Palmer requested records relating to his Transfer Request from the U.S. Navy pursuant to a Freedom of Information Act request. He was told there was no record of any alleged on-board attack and that any such records would have been destroyed after twenty-five years in any event, with no record of the destruction. On December 20, 2005, however, the VA received a copy of records relating to Palmer's 1975 Transfer Request,

---

[1] In the underlying proceedings in this matter, Palmer also challenged the effective date of the benefits assigned in the 2002 RO decision and the 1995 RO decision denying his claim, but he does not raise those issues on appeal. Because he expressly stated on appeal to the Veterans Court that he was not appealing those decisions and did not present any arguments directed to them, the Veterans Court found them to be abandoned. *See Palmer*, 2010 WL 2316257, *1 (citing *Ford v. Gober*, 10 Vet. App. 531, 535 (1997)). We agree.

including the Request itself.  It is unclear from the record how those documents came to be sent to the VA, though Palmer implies it was the result of a VA request in 1999.

In December 2004, nearly fifteen years after the May 1989 RO decision denying his service connection for a nervous order, Palmer filed a motion arguing that the May 1989 decision was the result of CUE because the RO failed to seek and obtain records about his alleged service assault in 1975.  In April 2005, the RO found there was no CUE in the 1989 RO decision.  Palmer appealed to the Board of Veterans Appeals, which agreed that there was no CUE.

On June 10, 2010, the Veterans Court affirmed, finding that the Board's decision that no CUE existed in the 1989 RO decision was supported by an adequate statement of reasons or bases, and that the decision was not "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  *See Palmer*, 2010 WL 2316257, at \*3.  It further found that Palmer's argument that the VA breached its "duty to assist" by not obtaining his 1975 Transfer Request and related records could not support an assertion of CUE because an assertion of CUE must be based on the record that existed as of 1989.  The Veterans Court also found that the transfer request was not in the 1989 record simply because it was in the possession of another government agency – i.e., the Navy.  *Id.*  Palmer appeals that decision to this court.

DISCUSSION

Our review of Veterans Court decisions is limited by statute.  Under 38 U.S.C. § 7292(a), we may review "the validity of a decision of the [Veterans] Court on a rule of law or of any statute or regulation . . . or any interpretation thereof (other than a determination as to a factual matter) that was relied on by the Court in making the

decision." Unless the appeal presents a constitutional issue, we "may not review (A) a challenge to a factual determination, or (B) a challenge to a law or regulation as applied to the facts of a particular case." 38 U.S.C. § 7292(d)(2). We review legal determinations by the Veterans Court under a *de novo* standard. *See Arzio v. Shineski*, 602 F.3d 1343, 1345 (Fed. Cir. 2010).

A final decision by an RO may be attacked collaterally if evidence establishes a CUE. *See* 38 U.S.C. § 5109A; *Cook v. Principi*, 318 F.3d 1334, 1342 (Fed. Cir. 2003) (en banc). To constitute CUE, "the alleged error must have been outcome determinative," and "the error must have been based upon the evidence of record at the time of the original decision." *Cook*, 318 F.3d at 1344; *Pierce v. Principi*, 240 F.3d 1348, 1353 (Fed. Cir. 2001) (For purposes of a CUE analysis, the relevant "evidence" is the "evidence that was of record when the challenged decision was made"). We address the arguments raised on appeal to the extent they present legal issues within our jurisdiction.[2]

On appeal, Palmer's primary argument is that the 1989 RO decision constituted CUE because the RO either failed to obtain or to consider the Navy records relating to Palmer's 1975 Transfer Request, and that consideration of the 1975 service assault would have changed the outcome of the decision.[3] Essentially, Palmer's contention is that,

---

[2] The Secretary of Veterans Affairs ("Secretary") agrees that the Veterans Court decision relied on a rule of law, the validity of which is reviewable by this court. Specifically, the Veterans Court held that documents not in the possession of the RO, but in another government agency's possession, are not "in the record" for purposes of RO adjudication.

[3] Although Palmer checked the box on Form 13 of his Informal Brief indicating that the Veterans Court

if the RO had records before it relating to his on-board injury and hate-crime trauma, it would have, and presumably should have, questioned his 1975 medical records and diagnosis (as did Dr. Mundt in 1999) and ordered a psychiatric evaluation in 1989. Palmer contends a full evaluation at that time would have resulted in a much earlier diagnosis of service-connected PTSD. Palmer seems to assert that the RO's failure to obtain the 1975 Transfer Request records was in breach of its "duty to assist" and that those records should have been considered because they were "in the record" at the time of the 1989 RO decision, on the theory that they were available upon request to the Navy. For the reasons discussed below, both contentions fail.

To the extent Palmer argues that the RO breached its "duty to assist" by not obtaining the records relating to his 1975 Transfer Request, the Veterans Court correctly determined that "it is well established that a failure to fulfill a duty to assist cannot constitute CUE." *Palmer*, 2010 WL 2316257, *2 (citing *Cook*, 318 F.3d at 1344-46); *see also* 38 C.F.R. § 20.1403(d)(2) (citing a failure to fulfill the duty to assist as an example of a situation that is not clear and unmistakable error). The reason for this rule is that the asserted error must have occurred at the time of the original determination. *Cook*, 318 F.3d at 1344. An allegation of a breach of the duty to assist, however, "necessarily implicates evidence that was not before the RO at the time of the original decision." *Id.* at 1346. Accordingly, such evidence cannot be reviewed on a CUE

---

decided constitutional issues, the only issue he identifies in the comment box below is the duty to assist. He also cites "due process" in his reply brief, but these arguments only reiterate his claim that the RO erred by not obtaining or considering his 1975 Transfer Request. They do not state a constitutional claim.

analysis, and Palmer's argument on this point is unavailing.

We also do not find that the records relating to the 1975 Transfer Request were "in the record" merely because they may have been in the Navy's possession. The Veterans Court found that "'[i]n the record' means that the documents are in the actual possession of the RO at the time it conducts its review of the claim." *Palmer*, 2010 WL 2316257, at *3. Although we agree with the Veterans Court's conclusion that these particular records were not "in the record" of the RO as of the 1989 determination, we do not endorse the broad statement of law that "in the record" means only in the "actual possession" of the RO. That statement does not take into account the doctrine of constructive notice set forth in *Bell v. Derwinski*, 2 Vet. App. 611, 613 (1992), in which the Veterans Claims court deemed the Board of Veterans Appeals to have constructive notice of four items that were generated by the VA or submitted to the VA by the appellant as part of her claim, but which were not originally part of the veteran's claim file. Because the Board had constructive notice of these documents, they were held to be part of the record. *Id.*; *cf. Disabled Am. Veterans v. Gober*, 234 F.3d 682, 695 (Fed. Cir. 2001) (noting that 38 C.F.R. § 20.1403(b)(2) "adopts the concept of 'constructive notice' for Board decisions").

The Secretary distinguishes *Bell* and argues that it does not apply to this case. We agree. As an initial matter, *Bell*, which issued in 1992, does not apply retroactively, and therefore would not apply to the 1989 RO decision in this case. *See Damrel v. Brown*, 6 Vet.App. 242, 246 (1994); *see also Disabled Am. Veterans*, 234 F.3d at 697 (upholding 38 C.F.R. § 20.1403(b)(2) and stating that "we will not disturb the VA's decision to pick the date of *Bell* to limit the [constructive notice] doctrine's applica-

tion in CUE cases"). Even if *Bell* had retroactive effect, moreover, we would decline to extend it to these circumstances, where the records at issue were neither generated by the VA nor submitted to it by the veteran as part of his claim. *See Hyatt v. Shinseki*, 566 F.3d 1364, 1371 (Fed. Cir. 2009) (declining to extend *Bell* to hold that the VA had constructive notice of court martial records arising from an incident during the veteran's service in the United States Marine Corps, when the records were not "generated by, submitted to, or otherwise within the VA's possession or control"). Because there is no evidence that the RO had either possession or actual or constructive knowledge of the 1975 Transfer Request records, we agree with the Veterans Court's conclusion that these documents were not "in the record" in 1989 for purposes of the CUE analysis.

Finally, even to the extent we could consider whether the RO erred by not considering Palmer's 1975 Transfer Request and the alleged service assault discussed in that request and related records, the omission of such evidence does not rise to the level of being "outcome determinative" for purposes of a CUE analysis. This evidence would not change the fact that, at the time of the 1989 RO decision, Palmer had not been diagnosed with a compensable nervous disorder or other compensable condition entitling him to benefits. Under the record that existed in 1989, therefore, there was simply no basis to award benefits, regardless of whether evidence of a service assault was also before the RO.[4]

---

[4] While it is true that Palmer has now been diagnosed with PTSD, and that Dr. Mundt suspects that his PTSD may be connected to his the 1975 service assault, there was no record of such a diagnosis before the RO in 1989 and no evidence "in the record" to even raise the suspicion that such a diagnosis should have been made.

For the reasons stated above, the decision of the Veterans Court is affirmed.

## Costs

Each party shall bear its own costs.

**AFFIRMED**

---

Indeed, as late as 1995, doctors did not believe Palmer's symptomatology supported a compensable diagnosis.