﻿Citation Nr: AXXXXXXXX
Decision Date: 02/26/21 Archive Date: 02/26/21

DOCKET NO. 200409-76358
DATE: February 26, 2021

ORDER

Entitlement to disability ratings in excess of 10 percent for bilateral knee degenerative arthritis, based on limitation of flexion, are denied.

Entitlement to disability ratings in excess of 10 percent for bilateral knee recurrent subluxation are denied.

Entitlement to effectives date prior to February 5, 2008, for the award of service connection for bilateral knee degenerative arthritis, including on the basis of clear and unmistakable error (CUE), are denied.

Entitlement to effective dates prior to April 8, 2016, for the award of service connection for bilateral knee recurrent subluxation are denied.

FINDINGS OF FACT

1. The preponderance of the evidence shows that the Veteran's bilateral knee disability is not manifested by limitation of flexion to 30 degrees; limitation of extension to 0 degrees; moderate or severe recurrent subluxation or lateral instability; knee sprain, incomplete ligament tear, or complete ligament tear; ankylosis; nonunion of the tibia and fibula; dislocated semilunar cartilage; removal of semilunar cartilage; or genu recurvatum. 

2. The claim upon which the reopened claim for service connection for a bilateral knee disability was granted was received on February 5, 2008.

3. In determining service connection for a bilateral knee disability was not warranted, the June 1977 Board decision was consistent with, and reasonably supported by, the evidence then of record and existing legal authority, and did not contain undebatable errors of fact or law that would have manifestly changed the outcome.

4. During and approximate to the pendency of the appeal, the preponderance of the evidence does not show that the Veteran’s bilateral knee disability was manifest by recurrent subluxation or lateral instability prior to April 8, 2016.

CONCLUSIONS OF LAW

1. The criteria for disability ratings in excess of 10 percent for bilateral knee degenerative arthritis, based on limitation of flexion, are not met. 38 U.S.C. §§ 1155, 5107, 5110; 38 C.F.R. §§ 3.102, 4.1, 4.7, 4.40, 4.45, 4.59, 4.71a.

2. The criteria for disability ratings in excess of 10 percent for bilateral knee recurrent subluxation are not met. 38 U.S.C. §§ 1155, 5107, 5110; 38 C.F.R. §§ 3.102, 4.1, 4.7, 4.40, 4.45, 4.59, 4.71a.

3. The June 1977 Board decision that denied service connection for a bilateral knee disability was not clearly and unmistakably erroneous. 38 U.S.C. § 7111; 38 C.F.R. §§ 20.1400-20.1411.

4. The criteria for effective dates prior to February 5, 2008, for the award of service connection for bilateral knee degenerative arthritis have not been met. 38 U.S.C. §§ 5101, 5107, 5110; 38 C.F.R. § 3.102, 3.105, 3.400.

5. The criteria for effective dates prior to April 8, 2016, for the award of service connection for bilateral knee subluxation have not been met. 38 U.S.C. §§ 5101, 5107, 5110; 38 C.F.R. § 3.102, 3.105, 3.400.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

On August 23, 2017, the Veterans Appeals Improvement and Modernization Act, Pub. L. No. 115-55 (codified as amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017), also known as the Appeals Modernization Act (AMA), was signed into law. This law creates a new framework for Veterans dissatisfied with VA’s decision on their claim to seek review. This decision has been written consistent with the new AMA framework.

The Veteran served on active duty in the United States Army from February 1975 to July 1976.

These matters come before the Board of Veterans' Appeals (Board) on appeal of February 2018 and March 2019 rating decisions of the Department of Veterans Affairs (VA) Regional Office (RO).

The Veteran appealed these decisions to the Board in a March 2020 notice of disagreement (VA Form 10182), opting into AMA from a February 2020 statement of the case (SOC), and requested direct review by a Veteran's Law Judge.

Increased Ratings

Disability evaluations are determined by the application of a schedule of ratings which is based, as far as can practically be determined, on the average impairment of earning capacity. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. Each service-connected disability is rated on the basis of specific criteria identified by Diagnostic Codes. 38 C.F.R. § 4.27. When rating the Veteran’s service-connected disability, the entire medical history must be borne in mind. Schafrath v. Derwinski, 1 Vet. App. 589 (1991). Separate higher or lower compensable evaluations may be assigned for separate periods of time if such distinct periods are shown by the competent evidence of record during the appeal, a practice known as “staged” ratings. See Hart v. Mansfield, 21 Vet. App. 505 (2007); Fenderson v. West, 12 Vet. App. 119, 126 (1999).

Regulations require that where there is a question as to which of two evaluations is to be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7.

The assignment of a particular diagnostic code to evaluate a disability is "completely dependent on the facts of a particular case." See Butts v. Brown, 5 Vet. App. 532, 538 (1993). One diagnostic code may be more appropriate than another based on such factors as an individual's relevant medical history, the diagnosis, and demonstrated symptomatology.

The intent of the rating schedule is to recognize painful motion with joint or periarticular pathology as productive of disability. Thus, with or without degenerative arthritis, it is the intention to recognize actually painful, unstable, or malaligned joints, due to healed injury, as entitled to at least the minimum compensable rating for the joint. 38 C.F.R. § 4.59; see Burton v. Shinseki, 25 Vet. App. 1, 5 (2011) (holding that the provisions of 38 C.F.R. § 4.59 are not limited to disabilities involving arthritis).

Moreover, when evaluating musculoskeletal disabilities, VA may, in addition to applying the schedular criteria, assign a higher disability rating when the evidence demonstrates functional loss due to limited or excessive movement, pain, weakness, excessive fatigability, or incoordination, to include during flare-ups and with repeated use, if those factors are not considered in the rating criteria. See 38 C.F.R. § § 4.40, 4.45, 4.59; see also DeLuca v. Brown, 8 Vet. App. 202 (1995); Burton, 25 Vet. App. at 5.

Nonetheless, a disability rating higher than the minimum compensable rating is not assignable under any diagnostic code relating to range of motion where pain does not cause a compensable functional loss. Rather, the "pain must affect some aspect of 'the normal working movements of the body' such as 'excursion, strength, speed, coordination, and endurance," as defined in 38 C.F.R. § 4.40, before a higher rating may be assigned. See Mitchell v. Shinseki, 25 Vet. App. 32, 37 (2011) (noting that while "pain may cause a functional loss, pain itself does not constitute a functional loss," and, is therefore, not grounds for entitlement to a higher disability rating).

Except as otherwise provided by law, a claimant has the responsibility to present and support a claim for benefits under the laws administered by VA. VA shall consider all information and medical and lay evidence of record. Where there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, VA shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107; 38 C.F.R. § 3.102; see also Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

In evaluating the evidence in any given appeal, it is the responsibility of the Board to weigh the evidence and decide where to give credit and where to withhold the same and, in so doing, accept certain medical opinions over others. Schoolman v. West, 12 Vet. App. 307, 310-11 (1999). In this regard, the Board has been charged with the duty to assess the credibility and weight given to evidence. Davidson v. Shinseki, 581 F. 3d 1313 (Fed. Cir. 2009); Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007). Indeed, the Court has declared that in adjudicating a claim, the Board has the responsibility to do so. Bryan v. West, 13 Vet. App. 482, 488-89 (2000). In doing so, the Board is free to favor one medical opinion over another, provided it offers an adequate basis for doing so. See Owens v. Brown, 7 Vet. App. 429, 433 (1995). 

Entitlement to increased disability ratings for a bilateral knee disability.

The Veteran's service-connected bilateral knee disability is currently rated as 10 percent disabling under DC 5009-5260 for right knee degenerative arthritis (osteoarthritis), effective February 5, 2008; 10 percent disabling under DC 5009-5260 for left knee degenerative arthritis (osteoarthritis), effective February 5, 2008; 10 percent disabling under DC 5009-5257 for left knee recurrent subluxation, effective April 8, 2016; and 10 percent disabling under DC 5009-5257 for right knee recurrent subluxation, effective April 8, 2016. 38 U.S.C. § 4.71a.

Hyphenated diagnostic codes are used when a rating under one diagnostic code requires use of an additional diagnostic code to identify the specific basis for the evaluation assigned. The additional code is shown after a hyphen. 38 C.F.R. § 4.27. Here, the Veteran’s arthritis (DC 5009) is rated based on limitation of flexion under DC 5260 and recurrent subluxation under DC 5257.

As a preliminary matter, the Board notes that, while this appeal was pending, VA published a final rule amending its regulations on musculoskeletal disabilities, effective February 7, 2021. See Schedule for Rating Disabilities: Musculoskeletal System and Muscle Injuries, 85 Fed. Reg. 76453, 76463 (Nov. 30, 2020); Schedule for Rating Disabilities: Musculoskeletal System and Muscle Injuries, 85 Fed. Reg. 85523, 85524 (Dec. 29, 2020). 

If a law or regulation changes during the course of a claim or an appeal, the version more favorable to the veteran will apply, to the extent permitted by any stated effective date in the amendment in question. 38 U.S.C. § 5110 (g); see Kuzma v. Principi, 341 F.3d 1327 (Fed. Cir. 2003). If the revised version of the regulation is more favorable, the implementation of that regulation under 38 U.S.C. § 5110 (g) can be no earlier than the effective date of that change. If the former version is more favorable, VA can apply the earlier version of the regulation for the period prior to, and from, the effective date of the change. 38 U.S.C. § 5110; Kuzma, 341 F. 3d 1327. 

Therefore, the Board will consider the Veteran's claim under both the old and new rating criteria, and the criteria that is more favorable to the Veteran will be applied.

Under the previous version of DC 5257, a 10 percent rating is warranted for slight recurrent subluxation or lateral instability, a 20 percent rating for moderate recurrent subluxation or lateral instability, and a 30 percent rating for severe recurrent subluxation or lateral instability. 38 C.F.R. § 4.71a (2020).

Under the amended version of DC 5257 for recurrent subluxation or instability, a 10 percent rating is warranted for a sprain, incomplete ligament tear, or complete ligament tear (repaired, unrepaired, or failed repair) causing persistent instability, without a prescription from a medical provider for an assistive device (e.g., cane(s), crutch(es), walker) or bracing for ambulation. A 20 percent rating is warranted for a sprain, incomplete ligament tear, or complete ligament tear (unrepaired, failed repair, or repaired) causing persistent instability, and a medical provider prescribes a brace and/or assistive device for ambulation. A 30 percent rating is warranted for unrepaired or failed repair of complete ligament tear causing persistent instability, and a medical provider prescribes both an assistive device and bracing for ambulation. 38 C.F.R. § 4.71a (2021).

DC 5260 and 5261 were unchanged by the recent amendments.

Under DC 5260, a noncompensable rating is warranted for flexion limited to 60 degrees. A 10 percent rating is warranted for flexion limited to 45 degrees. A 20 percent rating is warranted for flexion limited to 30 degrees. A 30 percent rating is warranted for flexion limited to 15 degrees. 38 C.F.R. § 4.71a.

Under DC 5261, limitation of extension of the leg to 45 degrees warrants a 50 percent rating; limitation to 30 degrees warrants a 40 percent rating; limitation to 20 degrees warrants a 30 percent rating; limitation to 15 degrees warrants a 20 percent rating; limitation to 10 degrees warrants a 10 percent rating; and limitation to 5 degrees warrants a noncompensable rating. 38 C.F.R. § 4.71a.

Normal knee flexion is to 140 degrees, and normal knee extension is to 0 degrees. See 38 C.F.R. § 4.71, Plate II.

The words “slight,” “moderate” and “severe” as used in the various diagnostic codes are not defined in the VA Schedule for Rating Disabilities. Rather than applying a mechanical formula, the Board must evaluate all of the evidence, to the end that its decisions are “equitable and just.” 38 C.F.R. § 4.6. It should also be noted that use of terminology such as “severe” by VA examiners and others, although an element of evidence to be considered by the Board, is not dispositive of an issue. All evidence must be evaluated in arriving at a decision regarding an increased rating. 38 C.F.R. §§ 4.2, 4.6. 

The Veteran was provided a VA examination for knee and lower leg conditions in April 2018. The examiner diagnosed the Veteran with bilateral knee joint osteoarthritis with slight recurrent subluxation.

The Veteran’s right knee range of motion was measured at 0 to 120 degrees for flexion and 120 to 0 degrees for extension. The examiner noted pain on flexion that causes functional loss. The examiner found evidence of pain with weight bearing, localized tenderness, and pain on palpation. The examiner found no evidence of crepitus. 

The Veteran’s left knee range of motion was measured at 0 to 120 degrees for flexion and 120 to 0 degrees for extension. The examiner noted pain on flexion that causes functional loss. The examiner found evidence of pain with weight bearing, localized tenderness, and pain on palpation. The examiner found no evidence of crepitus. 

The examiner found no evidence of pain on passive range of motion testing and no evidence of pain when the knee joints are used in non-weight bearing. The examiner found that the Veteran was able to bilaterally perform repetitive use testing with at least three repetition without additional functional loss or range of motion.

The examiner found no additional factors contributing to the Veteran’s bilateral knee disability.

The examiner found normal muscle strength and no evidence of muscle atrophy. The examiner found no ankylosis, no history of recurrent effusion, and no history of lateral instability. The examiner found a history of slight recurrent subluxation bilaterally. 

Joint stability testing was performed, and no instability was found bilaterally. 

The examiner did not find recurrent patellar dislocation, "shin splints" (medial tibial stress syndrome), stress fractures, chronic exertional compartment syndrome, or any other tibial and/or fibular impairment. The examiner did not find genu recurvatum, leg length discrepancy, or a meniscus condition. 

The examiner noted the Veteran’s constant use of a cane to assist locomotion.

The examiner found no other pertinent physical findings, complications, conditions, signs, or symptoms related to the Veteran’s right knee disability. 

The Veteran was provided a VA examination for knee and lower leg conditions in April 2016. The examiner diagnosed the Veteran with bilateral knee joint degenerative arthritis.

The Veteran’s right knee range of motion was measured at 0 to 105 degrees for flexion and 105 to 0 degrees for extension. The examiner noted pain that does not cause functional loss. The examiner found evidence of pain with weight bearing, localized tenderness, pain on palpation, and crepitus. 

The Veteran’s left knee range of motion was measured at 0 to 90 degrees for flexion and 90 to 0 degrees for extension. The examiner noted pain that causes functional loss. The examiner found evidence of pain with weight bearing, localized tenderness, and pain on palpation. The examiner found no evidence of crepitus. 

The examiner found that the Veteran was able to bilaterally perform repetitive use testing with at least three repetition without additional functional loss or range of motion. The examiner found that pain, weakness, fatigability, or incoordination do not significantly limit functional ability with repeated use over a period of time. The examiner found that pain significantly limits functional ability during flareups. The Veteran reported experiencing flareups “a few times” per week and lasting approximately 30 seconds.

The examiner found that disturbance of motion was an additional factor contributing to the Veteran’s bilateral knee disability.

The examiner found normal muscle strength and no evidence of muscle atrophy. The examiner found no ankylosis and no history of lateral instability. The examiner found a history of slight recurrent subluxation bilaterally. The examiner found a history of effusion with the Veteran reporting intermittent swelling in both knees. 

Joint stability testing was performed, and no instability was found bilaterally. 

The examiner did not find recurrent patellar dislocation, "shin splints" (medial tibial stress syndrome), stress fractures, chronic exertional compartment syndrome, or any other tibial and/or fibular impairment. The examiner did not find genu recurvatum, leg length discrepancy, or a meniscus condition. 

The examiner noted the Veteran’s regular use of a cane to assist locomotion.

The examiner noted a small effusion in the right knee and a medial plica in the left knee. The examiner found no other pertinent physical findings, complications, conditions, signs, or symptoms related to the Veteran’s right knee disability. 

The Veteran was provided a VA examination for knee and lower leg conditions in May 2012. The examiner diagnosed the Veteran with bilateral degenerative arthritis of the knees.

The Veteran’s bilateral knee range of motion was measured at 0 to 140 degrees for flexion with pain at 110. The examiner found normal extension with no evidence of painful motion. 

The examiner found that pain on movement was a contributing factor in the Veteran’s functional loss, functional impairment, or additional limitation of range of motion.

The examiner found that the Veteran was able to bilaterally perform repetitive use testing with at least three repetition without additional functional loss or range of motion. 

The examiner found evidence of localized tenderness and pain on palpation.

The examiner found normal muscle strength. Joint stability testing was performed, and no instability was found bilaterally. 

The examiner found no history of recurrent patellar subluxation/dislocation bilaterally. 

The examiner did not find "shin splints" (medial tibial stress syndrome), stress fractures, chronic exertional compartment syndrome, genu recurvatum, leg length discrepancy, or a meniscus condition. 

The examiner noted the Veteran’s constant use of a cane to assist locomotion.

The examiner found no other pertinent physical findings, complications, conditions, signs, or symptoms related to the Veteran’s right knee disability. 

The Veteran was provided a VA examination for knee and lower leg conditions in July 2010. The examiner diagnosed the Veteran with bilateral mild chondromalacia. The examiner also noted that mild tricompartmental degenerative joint disease was shown on imaging studies.

The examiner found full range of motion in the Veteran’s knees with no pain at any of the endpoints of range of motion maneuvers. The examiner found full weightbearing without evidence of swelling or palpable tenderness. The examiner found normal muscle strength, all providing evidence against this claim.

The examiner found no ligament laxity, and the medial and lateral ligaments were normal. The examiner found the Lachman’s test was normal with no movement, and the anterior and posterior drawer signs were negative. 

The examiner found no retropatellar dysphoria, crepitation, or grinding on compression of patella.

The Board also notes that while treatment records also periodically document the Veteran's complaints and treatment related to his bilateral knee disability, nothing in these records during the pendency of the claim show his adverse symptomatology to be markedly worse than what was reported at the above VA examinations.

Based on the foregoing evidence, the Board finds that increased ratings based on limitation of motion of the Veteran's bilateral knee disability are not warranted. See 38 C.F.R. § § 4.7, 4.71a.

A rating in excess of 10 percent for limitation of flexion and/or a separate rating for limitation of extension are not available, as such ratings would require a finding of limitation of flexion to 30 degrees or limitation of extension to 5 degrees, which are not shown even when incorporating functional loss due to the factors set forth in 38 C.F.R. § § 4.40 and 4.45. See DeLuca, 8 Vet. App. at 207; see also Mitchell, 25 Vet. App. at 32; Correia, 28 Vet. App. at 158; Sharp v. Shulkin, 29 Vet. App. 26, 33 (2017).

Under the former criteria under DC 5257, a rating in excess of 10 percent requires a finding of at least moderate subluxation or lateral instability. 38 C.F.R. § 4.71a. Here, the evidence supports a finding of slight recurrent subluxation, at best. Not all the evidence of record supports the current evaluations, let alone higher evaluation.

The April 2018 and April 2016 VA examinations found evidence of slight recurrent subluxation bilaterally. The July 2012 VA examination found no evidence or history of recurrent patellar subluxation/dislocation. The July 2010 examiner found no ligament laxity and that the medial and lateral ligaments were normal. Joint stability testing was performed at all four examinations and no joint instability was found. The April 2016 and April 2018 examination found normal anterior, posterior, medial, and lateral stability. The July 2012 examination found normal anterior, posterior, and medial-lateral stability. The July 2010 examination found the Lachman’s test and drawer tests were normal. 

Under the new criteria for DC 5257, a rating in excess of 10 requires is warranted for a sprain, incomplete ligament tear, or complete ligament tear (unrepaired, failed repair, or repaired) causing persistent instability. Here, the evidence does not show a sprain, incomplete ligament tear, or complete ligament tear. 

Thus, the Board finds that the medical evidence of record does not support a finding of moderate or severe recurrent subluxation or lateral instability, necessary for a higher rating under the previous rating criteria. 38 C.F.R. § 4.71a, DC 5257 (2021). The medical evidence of record also does not support a finding that the Veteran has a sprain or ligament tear, necessary for a higher rating under the amended rating criteria. 38 C.F.R. § 4.71a, DC 5257 (2020). 

The Board has also considered whether separate or increased evaluations are warranted under any other Diagnostic Codes pertaining to knee disabilities that would afford the Veteran higher ratings. Here, there is no evidence of ankylosis of the knees to warrant a rating under DC 5256; no evidence of malunion or nonunion of the tibia and fibula to warrant a rating under DC 5262 for impairment of the tibia; no evidence of dislocated semilunar cartilage with frequent locking to warrant a rating under DC 5258; no evidence of removal of semilunar cartilage to warrant a rating under DC 5259; and no evidence of genu recurvatum to warrant a rating under Diagnostic Code 5263. Hence, the Board will not discuss these Diagnostic Codes any further.

Accordingly, the Board finds that the preponderance of the evidence shows that the Veteran's bilateral knee disability is not manifested by limitation of flexion to 30 degrees; limitation of extension to 0 degrees; moderate or severe recurrent subluxation or lateral instability; knee sprain, incomplete ligament tear, or complete ligament tear; ankylosis; nonunion of the tibia and fibula; dislocated semilunar cartilage; removal of semilunar cartilage; or genu recurvatum. Therefore, the Board finds that the criteria for a higher rating are not met. See 38 C.F.R. § 4.71a; Fenderson, supra.

While the Veteran believes that a higher rating is warranted for his bilateral knee disability, the evidence of record does not support this belief. While the Veteran is competent to report the symptoms of his disabilities, he is not competent to opine on matters requiring medical knowledge, such as determining the severity of his medical condition at any given time, based on the criteria above. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007).

Again, it is important for the Veteran to understand that the medical findings provide highly probative evidence against the claims that the Board cannot, unfortunately, ignore. The medical findings outweigh the Veteran's belief that his disability warrants a higher disability rating and provide a clear basis for the opinion. Therefore, the Board provides more weight to the competent medical evidence of record and must deny the claim. This does not suggest, in any way, that the Veteran is not having problems with his bilateral knee disability. It is these problems that are the basis of the current ratings.

While the Board acknowledges the Veteran has problems as a result of his bilateral knee disability, the evidence of record does not indicate that the Veteran meets the rating criteria for higher evaluations or additional separate ratings.

In reaching this conclusion, the Board has considered the applicability of the benefit-of-the-doubt doctrine. However, where the preponderance of the evidence is against the Veteran's claim, that doctrine is not applicable. See U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 53 (1990).

Neither the Veteran nor his representative has identified any other rating criteria that would provide a higher rating or an additional rating. However, the potential applications of various provisions of Title 38 of the Code of Federal Regulations (2016) have been considered as required by the holding of the Court in Schafrath v. Derwinski, 1 Vet. App. 589, 593 (1991).

Entitlement to earlier effective dates for entitlement to service connection for bilateral knee degenerative arthritis and recurrent subluxation.

The Veteran contends that he is entitled to effective dates earlier than February 5, 2008, for entitlement to service connection for bilateral knee degenerative arthritis and earlier than April 8, 2016, for entitlement to service connection for bilateral knee recurrent subluxation. 

Specifically, the Veteran contends that he is entitled to an effective date in July 1976 based on CUE in the October 1976 rating decision and June 1977 Board decision that denied his initial claim for service connection for a bilateral knee condition. See April 2020 VA Form 9, October 2018 Statement in Support of Claim. 

The Veteran’s claim for a bilateral knee condition was also denied in an August 2000 Board decision and a February 2003 rating decision. The Veteran did not appeal the 1977 and 2003 Board decisions to the United States Court of Appeals for Veterans Claims (Court). The Veteran did not appeal the February 2003 rating decision to the Board and new and material evidence was not received in the year following the decision. 

The Veteran’s motion to reopen his previously denied claims for a bilateral knee condition was received by the Board on February 5, 2008. 

In a January 2012 Board decision, the Veteran’s claim for service connection for a bilateral knee disorder was reopened and remanded. In a November 2012 decision, the Board denied the claim for service connection. 

In a July 2014 Memorandum decision, the Court vacated the Board's denial and remanded it to the Board for development consistent with that decision. In July 2015, the Board remanded for additional development. 

In January 2017, the Board again denied the Veteran’s claim. The Veteran appealed this decision to the Court. In September 2017, the Court granted the parties Joint Motion for Remand (JMR), vacated the Board's January 2017 decision, and remanded the service connection claim to the Board for further development and consideration.

In a December 2017 Board decision, the Veteran was granted service connection for bilateral knee degenerative joint disease. In the February 2018 rating decision, the RO assigned an effective date of July 2, 2010, bilateral degenerative arthritis and April 8, 2016, for bilateral subluxation. During the pendency of the Veteran’s appeal, a March 2020 rating decision awarded the Veteran an earlier effective date for bilateral knee degenerative arthritis of February 5, 2008, the date the Veteran’s reopened claim for entitlement to service connection for a bilateral knee condition was received.

In general, the effective date of an award based on an original claim or a claim reopened after final adjudication of compensation shall be fixed in accordance with the facts found, but shall not be earlier than the date of the receipt of the application. 38 U.S.C. § 5110 (a); 38 C.F.R. § 3.400. Generally, the effective date of an award of disability compensation based on an original claim shall be the date of receipt of the claim or the date entitlement arose, whichever is later. 38 U.S.C. § 5110 (a); 38 C.F.R. § 3.400. The effective date of an award of disability compensation based on a claim to reopen after a final disallowance shall be the date of receipt of the new claim or the date entitlement arose, whichever is later. 38 U.S.C. § 5110 (a); 38 C.F.R. § 3.400 (q)(ii)(r). The provisions of 38 C.F.R. § 3.400 (b)(2) allow for assignment of an effective date the day following separation from active service if a claim is received within one year after separation from service.

When the Board disallows a claim, the disallowance becomes final unless the Chairman determines that reconsideration is warranted, an appeal is made, or another exception to finality applies, to include a finding of CUE. 38 U.S.C. §§ 7103, 7104, 7111; 38 C.F.R. § 20.1100.

Motions for review of prior Board decisions on the grounds of CUE are adjudicated pursuant to 38 U.S.C. § 7111 and 38 C.F.R. §§ 20.1400 to 20.1411.

If evidence establishes the CUE, the prior decision shall be reversed or revised. For the purpose of authorizing benefits, a rating or other adjudicative decision of the Board that constitutes a reversal or revision of a prior decision of the Board on the grounds of CUE has the same effect as if the decision had been made on the date of the prior decision. Review to determine whether CUE exists in a case may be instituted by the Board on the Board's own motion or upon request of the claimant. A request for revision of a decision of the Board based on CUE may be made at any time after that decision is made. Such a request shall be submitted directly to the Board and shall be decided by the Board on the merits, without referral to any adjudicative or hearing official acting on behalf of the Secretary. 38 U.S.C. § 7111.

CUE is a very specific and rare kind of error. 38 C.F.R. § 20.1403 (a). It is the kind of error of fact or law which, when called to the attention of later reviewers, compels the conclusion, to which reasonable minds could not differ, that the result would have been manifestly different but for the error. 38 C.F.R. § 20.1403 (a); see Russell v. Principi, 3 Vet. App. 310, 313-14 (1992) (en banc); see also Bustos v. West, 179 F.3d 1378, 1380-81 (Fed. Cir. 1999).

To establish CUE, the appellant must show: (1) that either the facts known at the time were not before the adjudicator or the law then in effect was incorrectly applied, (2) that an error occurred based on the record and the law that existed at the time the decision was made, and (3) that, had the error not been made, the outcome would have been manifestly different. See Bouton v. Peake, 23 Vet. App. 70, 71 (2008); Grover v. West, 12 Vet. App. 109, 112 (1999); Damrel v. Brown, 6 Vet. App. 242, 245 (1994); Russell, 3 Vet. App. at 313-14. If it is not absolutely clear that a different result would have ensued, the error complained of cannot be CUE. See 38 C.F.R. § 20.1403 (b), (c); see also Bustos v. West, 179 F.3d 1378 (Fed. Cir. 1999).

Even when the premise of error is accepted, if it is not absolutely clear that a different result would have ensued, the error complained of cannot be ipso facto clear and unmistakable. Fugo v. Brown, 6 Vet. App. 40, 43-44 (1993) (citing Russell, 3 Vet. App. at 313). A determination of CUE must be based on the record and the law that existed at the time of the prior adjudication. Baldwin v. West, 13 Vet. App. 1 (1999); Caffrey v. Brown, 6 Vet. App. 377 (1994).

The Veteran asserts that there was CUE in the June 1977 Board decision because VA failed to give a sympathetic reading of his records, failed to appropriately interpret the regulations, and relied on inadequate examinations. The Veteran contends that the September 1976 and March 1977 VA examinations should have performed MRIs or CT scans rather than the x-rays provided.

As a side note, it is unclear if MRI scans were available in 1976.

The June 1977 Board decision denied the Veteran’s claim based on a finding that the Veteran had no current knee pathology and no functional impairment relating to his knees. The decision noted that, in his May 1976 separation examination, the Veteran reported occasional cramps in his legs with strenuous exercise. The September 1976 VA examination found no knee condition. The March 1977 special orthopedic VA examination found that the Veteran’s knees were normal.

To establish CUE, the Veteran must show an error based on the facts known at the time that, if not made, would have resulted in a manifestly different outcome. See 38 C.F.R. § 20.1403 (a); see also Russell v. Principi, 3 Vet. App. 310, 313-14 (1992) (en banc); see also Bustos v. West, 179 F.3d 1378, 1380-81 (Fed. Cir. 1999). Here, the service records available at the time only showed complaints of occasional leg cramps and the two VA examination did not show a current diagnosis for a knee disability.

The Board notes that, in supporting his allegation of CUE, the Veteran referenced additional service treatment records not discussed in the June 1977 Board decision. These records show complaints of knee trouble during active service, including a complaint of 8 months of intermittent knee pain. However, these service records were not added to the record until 1997 and, therefore, were not available at the time of the June 1977 Board decision. 

Further, even had these additional service records been available at the time of the June 1977 Board decision, it is not absolutely clear that a different result would have ensued as the two VA examinations did not show a current diagnosis for a knee condition. Congress has specifically limited entitlement to service-connected benefits to cases where there is a current disability. "In the absence of proof of a present disability, there can be no valid claim." Brammer v. Derwinski, 3 Vet. App. 223, 225 (1992).

It is important for the Veteran to understand that the standard for CUE is very high. Mere disagreement with how facts were evaluated is an inadequate basis under which to raise the claim of CUE. Luallen v. Brown, 8 Vet. App. 92, 95 (1995). Similarly, allegations that the previous adjudication improperly weighed and evaluated the evidence can never rise to the stringent definition of CUE. See 38 U.S.C. § 5109A; 38 C.F.R. § 3.105(a); Pierce v. Principi, 240 F.3d 1348 (Fed. Cir. 2001); Damrel v. Brown, 6 Vet. App. 242 (1994); Fugo v. Brown, 6 Vet. App. 40 (1993).

As to the alleged inadequacy of the September 1976 and March 1977 VA examinations, the Veteran contends that VA failed in its duty to assist by not obtaining additional examinations, including more advanced imaging studies. 

However, a failure to fulfill the duty to assist cannot form the basis of a CUE claim. 38 C.F.R. § 20.1403 (d)(2); Cook v. Principi, 318 F.3d 1334, 1344-45 (Fed. Cir. 2003). In Cook, the United States Court of Appeals for the Federal Circuit (Federal Circuit) emphasized that a purported failure in the duty to assist cannot give rise to CUE, nor does it result in "grave procedural error" so as to vitiate the finality of a prior, final decision.

Further, an alleged failure in the duty to assist by the AOJ may never form the basis of a valid claim of CUE, because it essentially is based upon evidence that was not of record at the time of the earlier rating decision. See Elkins v. Brown, 8 Vet. App. 391, 396 (1995); Caffrey v. Brown, 6 Vet. App. 377, 384 (1994). The law is well settled that any breach of VA's duty to assist a claimant cannot form a basis for a claim of CUE because such a breach creates only an incomplete rather than an incorrect record. Id.

Thus, the Board finds that the argument that VA should have obtained additional examinations at the time of the June 1977 Board decision is without merit as to a finding of CUE.

It is important for the Veteran to understand that, even today in 2021, there is significant evidence in this case against the granting of service connection for this problem. The granting of this claim was clearly based on giving the Veteran the benefit of all doubt and to avoid additional litigation in the matter. There is so much significant evidence against the claim that is conceivable to maintain that there was CUE in the granting of the claim. Fortunately, this issue is not before the Board.

Upon careful and thorough review of the claims file, the Board concludes that the correct facts, as known at the time, were before VA adjudicators who denied the claims for service connection and that the statutory and regulatory provisions extant at the time were correctly applied. The Board finds that there was no error which was undebatable and of the sort which, had it not been made, would have manifestly changed the outcome at the time it was made. Accordingly, the claims for CUE in the June 1977 Board decision is denied.

The benefit of the doubt doctrine does not apply to the Veteran's claim of CUE in the June 1977 Board decision. Andrews v. Principi, 18 Vet. App. 177, 186 (2004) (noting that it is well established that the benefit of the doubt doctrine can never be applicable in assessing a CUE motion because the nature of such a motion is that it involves more than a disagreement as to how the facts were weighed or evaluated).

Therefore, without a finding of CUE, the current and proper effective date for service connection for bilateral knee degenerative arthritis in this case is the date of receipt of the reopened claim, February 5, 2008. See 38 U.S.C. § 5110 (a); 38 C.F.R. § 3.400 (q)(ii)(r).

As the record seems to indicate that the Veteran suffered from degenerative arthritis of his knees for years prior to his February 2008 claim to reopen, the Board is sympathetic to the Veteran's request for an earlier effective date. However, the Board is bound by the laws and regulations that apply to the Veteran's claim. 38 U.S.C. § 7104 (c); 38 C.F.R. § § 19.5, 20.101(a). As discussed above, those laws and regulations reflect that an effective date earlier than February 5, 2008, is not warranted.

As to the Veteran’s separate disability rating for bilateral knee recurrent subluxation or lateral instability under DC 5257, the Veteran was assigned an effective date of April 8, 2016, as the date entitlement arose. See 38 C.F.R. § 4.71a (2020). As discussed above, the April 2016 and April 2018 VA examinations found slight recurrent subluxation bilaterally. 

The Veteran contends that his effective date should be “well prior” to April 8, 2016, as he has had recurrent subluxation and/or instability for the entire time that he has had his knee condition.

Upon careful review of the available record, the Board finds that, during and approximate to the pendency of the appeal, the preponderance of the evidence does not show that the Veteran’s bilateral knee disability was manifest by recurrent subluxation or lateral instability prior to the April 8, 2016 VA examination. 

A June 1976 in-service treatment record noted some laxity in the left knee upon range of motion testing and found the right knee to be within normal limits. An April 2011 statement from the Veteran’s treating physician regarding the etiology of the Veteran’s knee condition noted medial laxity bilaterally and found that x-rays of the knees were normal. The April 2011 statement and associated treatment records do not indicate that stability testing was performed or provide any further discussion as to the nature or severity of the Veteran’s medial laxity.

As discussed in detail above, all four of the Veteran’s VA examinations for knee conditions included stability testing and all four found the Veteran’s knees to be within normal limits bilaterally. 

The April 2016 and April 2018 VA examinations found evidence of recurrent subluxation, which served as the basis for the Veteran’s award of a separate disability rating under DC 5257 for recurrent subluxation, effective April 8, 2016. 

The July 2010 examiner did not find ligament laxity. The May 2012 VA examinations did not find evidence or history of recurrent patellar subluxation/dislocation. The Veteran’s treatment records prior to April 2016 do not mention recurrent subluxation or show lateral instability outside normal limits. 

The May 2012 and April 2016 VA examiners also explained that the Veteran’s MRIs did not reveal underlying ligament conditions or ligamentous lesions which would have resulted in laxity. The examiners found that a diagnosis of medial laxity could not be confirmed based on examination and review of the Veteran’s imaging studies.

Further, even though the amended version of DC 5257 was not in effect prior to the current effective date, the Board notes that the Veteran’s examinations and treatment records do not show knee sprains, incomplete ligament tears, or complete ligament tears (repaired, unrepaired, or failed repair) causing persistent instability. See 38 C.F.R. § 4.71a (2021).

While the Veteran believes that entitlement to a separate disability rating under DC 5247 for bilateral recurrent subluxation or lateral instability arose prior to April 8, 2016, the evidence of record does not support this belief. While the Veteran is competent to report the symptoms of his disabilities, he is not competent to opine on matters requiring medical knowledge, such as determining the nature and severity of his medical condition and interpreting complicated diagnostic medical testing. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007).

Again, it is important for the Veteran to understand that the medical findings provide highly probative evidence against the claim that the Board cannot, unfortunately, ignore. The medical findings outweigh the Veteran's belief that entitlement to a separate rating under DC 5257 arose prior to April 8, 2016, and provide a clear basis for the opinion. Therefore, the Board provides more weight to the competent medical evidence of record and must deny the claim for an earlier effective date for a separate disability rating under DC 5257. 

While the Board acknowledges that the Veteran has a long history of problems as a result of his bilateral knee disability, the evidence of record does not support a finding that entitlement to a separate rating under DC 5257 arose prior to April 8, 2016.

As the date entitlement arose is latter than the February 5, 2008, date of receipt of the reopened claim for service connection for a bilateral knee disability, the current and proper effective date for service connection for bilateral knee subluxation in this case is the date entitlement arose, April 8, 2016. See 38 U.S.C. § 5110 (a); 38 C.F.R. § 3.400 (q)(ii)(r).

As the preponderance of the evidence is against the claims for earlier effective dates for the award of service connection for bilateral degenerative arthritis and recurrent subluxation, the benefit-of-the-doubt doctrine is not applicable and the claims are denied. See 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102. Thus, earlier effective dates are not warranted.

 

John J. Crowley

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board E. VanValkenburg, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.